CUTRER, Judge.
This appeal arises out of a products liability suit for damages due to injuries incurred when a battery exploded as Roderick Gran-ger lifted the hood of his pickup truck.
The facts of the occurrence of the accident are not in dispute. On August 13, 1979, Granger purchased a battery from Montgomery Ward & Company which was installed by Montgomery Ward in Granger’s pickup truck. The battery was manufactured by Gould, Inc. The battery functioned satisfactorily until August 29, 1979, two weeks after purchase. On that day, as Granger was preparing to leave his place of employment with Belmont Academy, his pickup engine would not turn over. Gran-ger left the cab and opened the hood of the truck and, at that moment, the battery exploded. As Granger opened the hood, he was near the battery. The explosion threw acid in Granger’s face causing injuries to his eyes and face, especially his left eye.
Granger filed suit for damages against Montgomery Ward & Company, Gould, Inc., and its liability insurer, Transportation Insurance Company. Montgomery Ward filed a third party demand against Gould for contractual indemnity and attorney’s fees. After trial on the merits the trial court rendered judgment in favor of Granger and against Gould and its insurer in the amount of $155,239.13. Montgomery Ward was awarded the sum of $3,129.50 as attorney’s fees on its third party demand. The plaintiff’s suit against Montgomery Ward was *322 dismissed. From this judgment Gould and its insurer appeals. Granger answered the appeal seeking an increase in the award. The liability of Gould is not at issue on appeal.
The issues on appeal are:
(1) Whether the trial court committed manifest error in its evaluation of the medical testimony, especially that of Dr. Wyble;
(2) Whether the trial court erred by denying a motion of Gould to have Gran-ger examined by Dr. Robert Azar of New Orleans; and
(3) Whether the damages awarded were excessive.
The first issue involves the trial court’s evaluation of the medical testimony. In his reasons for judgment, the trial judge reviewed the testimony of the three ophthalmologists, and one optometrist. In addition, the testimony of the plaintiff was before the court. In his reasons, the trial judge stated as follows:

“The real issue and only issue remaining for this Court to decide is the amount of damages the plaintiff, Roderick Gran-ger, is entitled to recover for his injuries sustained in the accident here in question. The Court was impressed with the testimony of the plaintiff, considering his demeanor, his work history and life style. The Court is of the opinion that plaintiff was severely injured, receiving serious injuries to his eyes in the accident, particularly to the left eye. The Court is convinced that the plaintiff suffered severe pain from the time of the accident up to the time of trial and will continue to have pain, particularly to his left eye. The Court, looking at all of the testimony, including the doctors’ and the plaintiff’s testimony, is of the opinion that plaintiff is in effect blind in his left eye and will remain blind for the rest of his life. The Court also finds that the plaintiff has also suffered from loss of vision as a result of the accident in the right eye, while not to an extent that would keep him from performing the duties that he was performing at the time of the accident or driving a truck. The Court takes into consideration the fact that Dr. Wyble was connected with the Belmont Academy at the time of the accident and that fact could have subconsciously caused him to minimize plaintiff’s injuries as Belmont Academy may have been responsible to plaintiff for workmen’s compensation benefits. The Court finds that Dr. Thompson and Dr. Soileau are perhaps more impartial in giving their diagnosis of plaintiff’s condition. The Court takes cognizance of the fact that while the visual acuity test is a subjective test when done by a specialist, it is indeed difficult for a patient to feign good vision in favor of poor vision. Even defendant’s physician, Dr. Azar, found disability to plaintiff’s right eye and did perform an objective test on his left eye which showed that he had at least 20/400 vision. All of this testimony, in addition to plaintiff’s, convinces the Court as stated above that plaintiff is in effect legally blind in his left eye.”

The trial court’s conclusions are fully supported by the record.
Immediately following the accident on August 29, 1979, Granger was taken to the offices of Dr. Wyble and LaFleur for examination and treatment. Dr. LaFleur was on duty and examined Granger and prescribed medication. The following day Granger reported to Dr. Wyble. Dr. Wyble testified that he saw Granger four times; August 30, September 4, 7 and 11, 1979.
On the initial examination Dr. Wyble found Granger’s vision to be 20/30 in the right eye and 20/50 in the left. This physician found the existence of conjunctiva or inflammation of the white membrane next to the eye. He found no cornea problem. Dr. Wyble testified that upon the subsequent three visits in September, Granger’s inflammation (conjunctiva) increased. Granger’s complaint of pain increased. On his last visit, Granger told the doctor his pain was so severe he couldn’t sleep. He stated that he became nauseated as a result of the pain. Dr. Wyble stated that upon Granger’s last visit, September 11,1979, the inflammation was increasing. Dr. Wyble *323 stated that he did not test Granger’s vision after the initial visit on August 30, 1979. Dr. Wyble was somewhat doubtful that Granger’s vision in the left eye could have decreased from 20/50 to 20/400 by September 14, 1979, the day Dr. Thompson found the 20/400 vision.
Granger next consulted Dr. Robert Thompson, a specialist in Ophthalmology and E. N. T. This physician saw Granger on three occasions; September 14, 21 and October 13, 1979. The physician had prescribed glasses for Granger in 1976 as he found him farsighted. On that examination in 1976 Granger had 20/20 vision in the right eye and 20/25 in the left. On September 14, 1979, this physician found that Granger had marked photophobia (eyes sensitive to light). Both of Granger’s eyes were inflamed. Vision tests showed that Granger had vision in the right eye of 20/70 without glasses and 20/60 with glasses. The left eye showed 20/400 with or without glasses. The left eye could not be corrected. On September 21st there was no change in the condition of Granger’s left eye but slight change for the better in the right. Granger had a vision of 20/40 in the right eye. On October 13th, Dr. Thompson did not test for vision but changed medication. He recommended that Granger see another doctor. This doctor stated that 20/40 vision was a serious impairment but Granger could perform work with this vision. The physician stated that a vision of 20/200 is classified as legally blind.
Granger was examined by Dr. Hosea Soi-leau, an optometrist, on December 27, 1979. Dr. Soileau found that Granger had a 20/40 vision in the right eye but was totally blind in the left eye. He stated that Granger was very sensitive to light in both eyes. He felt that Granger had an impairment to the nerve that controls the pupil reaction to the left eye.
At the request of Gould, Granger was examined by Dr. Paul Azar, an ophthalmologist of Lafayette. This physician saw Granger one time on January 13, 1981. This physician found that Granger had a vision of 20/50 in the right eye but the physician could not give a visual acuity test to Granger’s left eye as the eye lid would not open for such test. The doctor stated that Granger had photophobia in the left eye and due to the pain did not open the eye for examination. However, the doctor did get an objective test known as O.K.N. In this test the physician would hold the eye lid open and have the patient look at a rotating drum which reflected alternating rays of light. The physician stated that this test would give “an appropriate visual acuity.” This test revealed that Granger was getting some light into the eye and the doctor felt that the test results showed an “equivalent to 20/400.”
A review of the medical evidence clearly supports the trial judge’s conclusion that Granger was legally blind in his left eye and some impairment existed in the right eye which impairment was caused by the injuries received in the accident. The trial judge, in his reasons for judgment, stated that he took into consideration the fact that Dr. Wyble was an officer with Belmont Academy at the time of Granger’s accident and examination. Due to a possible workmen’s compensation claim against Belmont, the court felt this may subconsciously cause the doctor to minimize Gran-ger’s injuries. Dr. Wyble stated that he was an officer with the academy and that he was aware that Granger was contending that he was hurt while on the premises of Belmont, Granger’s employment. The trial judge committed no error in taking this fact into consideration.
There is abundant proof in the record to support each of the trial court’s findings of fact. It is well settled that on appellate review the findings of the trier of fact are entitled to great weight and should not be disturbed unless clearly wrong. On appeal, the reviewing court should not disturb reasonable evaluations of credibility and reasonable inferences of fact by the trial judge.
DENIAL OF FURTHER MEDICAL EXAMINATION
The next issue is whether the trial court erred in denying the request of Gould and *324 its insurer to have Granger examined by Dr. Robert Azar of New Orleans.
Shortly before trial, Gould filed a motion to have Granger ordered to submit himself for examination by either Dr. Paul Azar of Lafayette or Dr. Robert Azar of New Orleans. The court granted the motion as to Dr. Paul Azar who examined Granger two days before trial on the merits. The trial was held open for the taking of the doctor’s deposition. The deposition was taken and filed in the record two weeks after trial. We have previously discussed this physician’s testimony. Gould and its insurer then requested that the court order Gran-ger to be examined by Dr. Robert Azar of New Orleans. This motion was denied by the trial court.
Gould contends that since Dr. Paul Azar was unable to get a subjective acuity test, as Granger did not open his left eye, that another examination should be ordered by Dr. Robert Azar of New Orleans.
The pertinent law on the subject of medical examinations is LSA-C.C.P. art. 1464 (formerly C.C.P. art. 1493) which states:

“When the mental or physical condition of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control, except as provided by law. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.”

Under this provision, each request for additional medical examination must be determined according to its own facts and circumstances. In this case the trial court denied the motion for further examination on the principal ground that the granting of the motion could create unnecessary time delays in the termination of the suit. We may add also that- Granger was examined by three qualified ophthalmologists and one optometrist. One of these, Dr. Azar, was chosen by Gould. The fact that Dr. Azar could not perform the visual acuity test on Granger’s left eye is not grounds for a second opinion. Dr. Azar did obtain a O.K.N. test which revealed at least a 20/400 vision in the left eye.
Article 1464 (previously 1493) leaves great discretion to the trial judge in ordering an examination to take place. Such an order of examination can only be granted upon the showing of good cause. With the three specialists and the optometrist having examined Granger, Gould and its insurer were made fully aware of Gran-ger’s medical condition. A defendant is not entitled to have examinations made in order to search for a report which may be more favorable to such defendant. We find no abuse of discretion by the trial court in denying this request. Monroe v. Northwestern National Insurance Company, 210 So.2d 365 (La.App. 3rd Cir. 1968), writs ref’d, 252 La. 683, 212 So.2d 428 (La.1968).
DAMAGES
Gould and its insurer contend the general damages awarded were excessive. The trial court awarded general damages as follows:
Permanent loss of vision of left eye $100,000.00
Pain and suffering, past and future 40,000.00
Partial loss of vision in right eye 15,000.00
Granger, 45 years of age, was off work for about two weeks following the accident. He continued to work following return. He had enough vision in his right eye to perform his duties as a janitor and subsequently as a delivery van driver. For this reason, no loss of wages was awarded by the trial court. We have carefully considered the damages and losses suffered by Granger as general damages and find that there is no abuse of discretion by the trial court in the award of general damages. The award is neither excessive or inadequate.[1]
*325 For the reasons set forth herein, the judgment of the trial court is affirmed. Gould and its insurer, Transportation Insurance Company, shall pay the costs of this appeal.
AFFIRMED.

. As reference we are cited the case of Outlaw v. Bituminous Ins. Co., 357 So.2d 1350 (La.App. *325 4th Cir. 1978), writ ref’d, 359 So.2d 1293 (La.1978), which awarded $150,000.00 for the loss of an eye by a nine year old boy.