477 So.2d 1205 (1985)
Harvel Wilson VARNADO, Individually and on Behalf of His Minor Child, Charles Arthur Varnado
v.
John SANDERS.
Harvel Wilson VARNADO, Individually, and on Behalf of His Minor Child, Charles Arthur Varnado
v.
Danny SANDERS.
Nos. 84CA0822, 84CA0823.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
On Rehearing November 8, 1985.
*1208 Reggie Simmons, Franklinton, for Harvel Varnado.
Bradley Lewis and John W. Anthony, Bogalusa, for Commercial Union Assur. Co.
Dale Branch, Bogalusa, for Danny Sanders and John Sanders.
Robert McDonald, Metairie, for Hartford Ins. Co.
Before CARTER, SAVOIE and ALFORD, JJ.
CARTER, Judge.
Charles Arthur Varnado, thirteen-year-old son of plaintiff, Harvel Wilson Varnado, suffered an eye injury while in the course and scope of his employment on a dairy farm owned by defendant John Sanders and operated by defendant Danny Sanders.[1] While unwrapping a piece of barbed wire used to secure a gate on the premises of John Sanders, Charles was struck in the left eye by the tip of the piece of barbed wire. As a result of this accident, Charles suffered a corneal laceration with loss of his iris and lens, rendering him legally blind in his left eye.[2]
Plaintiff, as administrator of the estate of Charles Arthur Varnado, sued Danny Sanders for worker's compensation. Plaintiff, individually and on behalf of his minor son, sued John Sanders and his liability insurer, Commercial Union Assurance Company, for personal injuries. Defendants answered the suit claiming the dairy operation was a joint venture and that plaintiff's sole recovery was in worker's compensation.
Danny Sanders then filed a third-party demand against Hartford Accident and Indemnity Company (Hartford). Hartford had issued a worker's compensation insurance policy to John Sanders to cover farm and dairy hands. The policy had been renewed every year since it was originally taken out some time ago, even though John Sanders had ceased his own dairy operation around 1970. Danny had no worker's compensation insurance. In his third-party demand, Danny seeks to have Hartford assume his defense in the worker's compensation claim or pay his attorney's fees in lieu thereof. Danny claims that since he and his father are engaged in a joint venture, Hartford's coverage of his father enures to his benefit. All of the suits were consolidated.
In a bench trial, the trial judge found Danny Sanders and John Sanders were engaged in a joint venture and that plaintiff's only remedy was in worker's compensation. Danny and John were held solidarily liable to plaintiff for worker's compensation benefits. In his reasons for judgment, the trial judge set forth that plaintiff failed to prove there was an unreasonable risk of harm in the gate or barbed wire which *1209 injured Charles, that neither defendant was negligent or liable to plaintiff under any other theory of tort liability, and that the cause of the injury was Charles' own negligence.
Penalties of 12% on all past due worker's compensation, $3,500.00 in attorney's fees, and all expert fees were assessed against Danny and John in solido. Since the trial court found a joint venture existed, Hartford, by virtue of its policy with John Sanders, was held liable to pay all costs assessed against Danny Sanders. Hartford was also cast for an additional $3,500.00 in attorney's fees and costs on Danny Sanders' third party demand.
Hartford appealed the finding of a joint venture as well as all other findings against it. Plaintiff appeals the finding of a joint venture and the dismissal of its tort suit against John Sanders.[3]

ASSIGNMENTS OF ERROR
Hartford lists the following six assignments of error:
1. The trial court erred in finding that a joint venture existed between John Sanders and Danny Sanders;
2. The trial court erred in finding that Charles Varnado was an employee of John Sanders;
3. The trial court erred in allowing plaintiff to amend his pleadings to add John Sanders and Hartford as defendants after the trial on the merits, even without service on these defendants;
4. The trial court erred in awarding penalties, costs, and attorney's fees in favor of plaintiff against John Sanders and granting judgment over and against Hartford through the third party demand of Danny Sanders;
5. The trial court erred in awarding attorney's fees and costs in favor of Danny Sanders on the third party demand against Hartford for allegedly failing to defend Danny Sanders in this worker's compensation matter; and
6. The trial court erred in finding the Hartford's worker's compensation policy afforded coverage to an employee of Danny Sanders.
Plaintiff lists the following twelve assignments of error:
1. Whether a valid, legally recognizable joint venture existed between John Sanders and Danny Sanders on the date and at time of the accident complained of;
2. Whether the trial court erred in refusing plaintiff's motion to compel pretrial discovery of pre-trial statements of Danny Sanders and John Sanders, and, further, in refusing to require defendants to introduce those statements in evidence on the trial of this cause;
3. If there be a valid joint venture in existence between John Sanders and Danny Sanders at the time of the accident complained of, whether the joint venture was effective as to Charles Arthur Varnado to preclude a successful tort action against John Sanders, and whether the employer-employee relationship between John Sanders and Charles Arthur Varnado precluded such a tort action;
4. Whether the doctrine of strict liability applies to the injury sustained by Charles Arthur Varnado;
5. Whether contributory negligence or comparative negligence is applicable in cases of strict liability;
6. Whether the trial court erred in finding that Charles Arthur Varnado was guilty of contributory or comparative negligence, or assumed the risk (victim fault);
7. Whether plaintiff is entitled to maximum statutory benefits, penalties and attorney's fees under the worker's compensation;
8. Whether the trial court erred in failing and refusing to grant plaintiff attorney's fees for answering the appeals *1210 of defendants and in the prosecution of plaintiff's own appeal;
9. Whether the trial court erred in refusing to recognize Professor Wiley Poole as an expert witness as a safety engineer, with experience in farm safety;
10. Whether the trial court erred in refusing to accept Chester Jenkins as an expert witness;
11. Whether the expert witness fees of Melville Wolfson and Professor Wiley Poole should be allowed; and,
12. Quantum in tort.

HARTFORD'S AND PLAINTIFF'S ASSIGNMENT OF ERROR NO. 1
In these assignments of error, plaintiff and Hartford contend that the trial court erred in finding that a joint venture existed between John and Danny Sanders.
In the recent case of Cajun Electric Power Co-Op, Inc. v. McNamara, 452 So.2d 212, 215 and 216 (La.App. 1st Cir. 1984), writ denied 458 So.2d 123 (La.1984), this court reviewed the elements of a joint venture:
(1) A contract between two or more persons;
(2) A juridical entity or person is established;
(3) Contribution by all parties of either efforts or resources;
(4) The contribution must be in determinate proportions;
(5) There must be joint effort;
(6) There must be a mutual risk vis-a-vis losses;
(7) There must be a sharing of profits.
We further set forth:
The existence or nonexistence of a joint venture is a question of fact, although what constitutes a joint venture is a question of law. Grand Isle Campsites, Inc. v. Cheek, 262 La. 5, 262 So.2d 350 (La.1972). There are no hard and fast legal rules fixing the requisites for a joint adventure; each case must be considered sui generis and care must be exercised that consideration is given to the usages and practices characteristic of the particular commercial undertaking sought to be labeled a `joint venture.' Hero & Company v. Farnsworth & Chambers Co., 236 La. 306, 107 So.2d 650 (La.1958).
Our review of the trial court's reasons for judgment leads to the conclusion that the trial judge was manifestly erroneous in his application of his factual findings to the law. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). In analyzing the trial court's findings, we quote the reasons for judgment, in pertinent part as follows:
A fair preponderance of the testimony reveals the following: John Sanders operated a dairy until sometime about 1970. Thereafter, and although he maintained his farm property upon which there was a dairy barn, fences, pastures and related equipment, his principal source of income was derived from hauling milk for one of the local dairy cooperatives. As early as 1978 he and his son, Danny, began discussing the possibility of going into a dairy venture together whereby Danny would own one-half of the cows and John would own the other half. John's contribution to the operation would be in the form of furnishing land and equipment. The labor was to be furnished by Danny. They originally approached Mr. Robert Jones, the FHA County Supervisor, about borrowing money from the Farmers Home Administration. Due to administrative rule changes within the FHA a joint loan would not be considered. Even if the financially more affluent John Sanders would have met FHA's criteria to qualify for the loan, it would have been made at a rate of 12% interest, whereas an individual loan to Danny would be at a 6% interest rate. Knowing that John Sanders was an experienced dairyman and would be part of this venture by providing additional working capital in the form of land, dairy barn, milking and other related equipment estimated by Jones to have a value in excess of $40,000.00, Jones proceeded to make a loan to Danny Sanders, individually, in order *1211 that he could purchase dairy cattle. Mr. Jones further testified that without John Sanders participation he would not have made the loan to Danny Sanders. Additionally, the FHA required that Danny procure a lease from his father for approximately 150 acres of land. This lease was unrecorded, and was on a form provided by the FHA and apparently was a technical requirement for documentation of their administrative file. It is evident that John Sanders made a substantial capital contribution to the operation; paid for supplies for new fences; and supplied the dairy barn and repaired it in addition to furnishing the related equipment in the form of milking machines, tractors and other farm implements. Mr. Sanders paid Charles Varnado for painting the dairy barn, Curtis Commodore for building the fence on the leased property, paid John Rocko for spraying pastures, paid the Washington Cooperative for various supplies, including hay for cows, supplied diesel fuel for tractors, paid the electric bill at the dairy barn, and also paid some expenses when the cash flow would not permit his son, Danny, to pay these items. Additionally Mr. Sanders allowed Danny to use the remainder of his unleased property upon which to graze the cows. Although Mr. Sanders would help Danny work the cows, he would not milk them, but would help with the physical labor of keeping up the fences, clearing the fence rows, etcetera, and gave his inexperienced son, 21 years of age, advice regarding planting pastures and handling the accounting. From time to time Mr. Sanders occasionally supervised the operation by telling Danny and his employee, Charles Varnado, what to do regarding the operation of the dairy. After the dairy operation began, Danny Sanders made no profit and the expenses were taken as deductions on his income tax, which consisted of among other things, for example, the wages paid to Charles Varnado. Other depreciations and deductions for contributions of capital were taken by John Sanders in connection with his income tax return. The over-all plan represented a method by which John Sanders would get back into the dairy business. The two contemplated that once Danny's cows were paid for, John Sanders would then put a number of cows into the operation, the labor would be performed by Danny and his employees, and the profit would be divided accordingly. During this time Mr. Sanders was to provide, and did in fact provide, workmen's compensation insurance which was purchased during the time in which the dairy operation was under way. Ultimately Mr. Sanders expected to make a profit out of this arrangement, and by borrowing money, through Danny individually, at a 6% rate from the Farmers Home Administration was the cheapest way for them to get into the operation together and for him to be repaid for his investment.
The Court therefore finds that John Sanders and his son did at least intend to form a joint venture. They combined their capital, labor and skill and common effort to engage in a dairy operation. Ultimately they expected to share profits; until that time there were losses that they both shared; each had a proprietory interest in the operation; and each had exercised right of control over the venture. Thus it becomes abundantly clear Charles Arthur Varnado's exclusive remedy is for workmen's compensation benefits. [Emphasis added]
The testimony of Robert Truitt Jones, County Supervisor for the Farmer's Home Administration, corroborates the Sanders' description of their business arrangement. His testimony indicates that the Sanders intended to form a joint venture, but that it was not advantageous when trying to borrow money to operate as such. Because of the peculiar FHA requirements and regulations, the Sanders had to change the nature of their business relationship (i.e. a joint venture).
The trial judge found that the parties intended to form a joint venture. While intention is an important element in *1212 determining the existence of a joint venture, it is insufficient to establish the existence of a joint venture. Grand Isle Campsites, Inc. v. Cheek, 262 La. 5, 262 So.2d 350 (1972). The facts must show the intent was carried out and that the venture was actually consummated.
Since the parties are father and son, it is difficult to delineate their personal and business relationships and arrangements. Clearly, there was an intention to form a joint venture at some time in the future. However, this intention was not carried out and this venture never materialized. When the parties realized that financially, a joint venture was not as beneficial as they had anticipated, a joint venture was not perfected.
This was merely a case of a father helping his son.[4] John's dairy equipment and pasture were idle for years. John gratuitously allowed Danny to use these facilities to get a business started and gave his son the benefit of his advice. John Sanders chose not to purchase any dairy cattle to place on the dairy farm because under the financial arrangement Danny had with the FHA, the FHA would have had a valid lien on John's cattle as well as on Danny's cattle. John testified that once Danny had paid off the FHA loan, he and Danny would work out an arrangement to split profits. It is at that future time that a joint venture might have developed. However, events never reached this point, and a joint venture was not actually formed.
Therefore, we find that the trial court's determination that a joint venture existed between John and Danny Sanders is manifestly erroneous.

PLAINTIFF'S ASSIGNMENT OF ERROR NO. 2
Plaintiff contends that the trial court erred in refusing plaintiff's motion to compel pre-trial discovery of pre-trial statements made by Danny and John Sanders and in refusing to require defendants to introduce those statements into evidence.
Plaintiff's main objective for obtaining any prior statements made by the defendants is that the statements might tend to negate the intention to form a joint venture.
Because of our ruling reversing the trial court's finding of a joint venture, it is unnecessary to determine the merit of this assignment of error.

HARTFORD'S ASSIGNMENT OF ERROR NO. 2
Hartford contends that the trial court erred in finding that Charles Varnado was an employee of John Sanders.
The trial court found that Charles Varnado was an employee of John Sanders and Danny Sanders by virtue of their joint venture. Hartford contends that Charles was not an employee of John Sanders. In support of this contention Hartford reasons that Charles Varnado was the employee of John's son, Danny Sanders.
Since we have determined that no joint venture existed, Charles was clearly not an employee of John by virtue of the joint venture. Therefore, the issue remaining is whether Charles was an employee of John Sanders under any other theory.
In Gaspard v. Travelers Insurance Company, 284 So.2d 104 (La.App. 3rd *1213 Cir.1973), the court held that the essence of the employer-employee relationship is the right to control. The four primary evidentiary factors considered in deciding the above are: (1) selection and engagement, (2) payment of wages, (3) power of dismissal, and (4) power of control. Sellers v. City of Abbeville, 458 So.2d 592 (La.App. 3rd Cir.1984), writ denied, 462 So.2d 1248 (La.1985); Gaspard v. Travelers Insurance Company, supra. Although just prior to the accident Charles was helping to mend a fence on the unleased portion of John's property, Charles was not hired or paid by John. At the time of the accident, Charles was engaged in the performance of the duties of his employment with Danny. Danny had selected Charles for and engaged him in work on Danny's dairy operation. Danny paid Charles and had the power to dismiss him. Although John exercised some control over Charles (possibly because John was Charles' uncle), Danny had the power of control over Charles.
We find, therefore, that Charles was not an employee of John, but was employed solely by Danny. The trial court's finding that Charles was an employee of John is manifestly erroneous.

PLAINTIFF'S ASSIGNMENT OF ERROR NO. 3
Plaintiff contends that the trial court erred in finding that his exclusive remedy was worker's compensation, thus precluding his right to recover in tort against John Sanders. The trial court found Charles to be an employee of the joint venture between John and Danny and precluded an action in tort under LSA-R.S. 23:1032. However, since we have determined that no joint venture existed between John and Danny, we find that plaintiff's exclusive remedy against Danny Sanders is for worker's compensation. Wright v. Moore, 380 So.2d 172 (La.App. 1st Cir.1979), writ denied, 382 So.2d 164 (La.1980). Plaintiff, however, is not precluded from pursuing a tort action against John Sanders since there is no employer-employee relationship between them.

HARTFORD'S ASSIGNMENT OF ERROR NO. 3
The original judgment of the trial court held Danny Sanders liable for worker's compensation. Subsequently, the trial judge signed an amended judgment holding Danny and John Sanders solidarity liable for worker's compensation payments to Charles.
Hartford claims that the trial court erred in allowing plaintiff to amend his pleadings to add John Sanders and Hartford as defendants after the trial on the merits.[5]
Having found that John and Hartford are not liable to Charles for worker's compensation benefits, we find it unnecessary to address this assignment of error.

HARTFORD'S ASSIGNMENTS OF ERROR NOS. 4, 5 & 6
In these assignments of error, Hartford contends that the trial court erred in the following respects:
(1) in awarding penalties, costs, and attorney's fees in favor of plaintiff and against John Sanders and Hartford;
(2) in awarding attorney's fees and costs in favor of Danny Sanders on the third party demand for failure to defend; and
(3) in finding that the worker's compensation policy issued by Hartford afforded coverage to an employee of Danny Sanders.
Because of our previous findings that no joint venture existed between John and Danny Sanders and that Charles Varnado was not an employee of John Sanders, but was employed solely by Danny Sanders, we find that the trial court committed manifest error in the following respects. The trial court erred in awarding penalties, costs, and attorney's fees in favor of plaintiff *1214 and against John Sanders and Hartford. As we have previously determined, Charles Varnado was not an employee of John Sanders; therefore, John Sanders and Hartford are not liable to plaintiff for arbitrary and capricious denial of worker's compensation benefits. Furthermore, the trial court was manifestly erroneous in awarding attorney's fees and costs in favor of Danny Sanders on the third party claim for failure to defend. Hartford did not issue a worker's compensation policy to Danny Sanders and had no obligation to defend him. Additionally, the trial court committed manifest error in finding that the worker's compensation policy issued by Hartford afforded coverage to an employee of Danny Sanders. Charles Varnado was employed by Danny Sanders, and Hartford did not issue a worker's compensation policy to Danny. Therefore, Danny Sanders' employee was not afforded coverage under the Hartford policy.

PLAINTIFF'S ASSIGNMENT OF ERROR NO. 4
In this assignment of error, plaintiff contends that John Sanders should be liable for plaintiff's injuries under LSA-C.C. art. 2317.
For recovery under LSA-C.C. art. 2317, a plaintiff must show: (1) that the thing which caused the injury was in the care or custody of the defendant owner; (2) that a vice or defect existed in the thing; and (3) that the vice or defect caused the injury. Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Loescher v. Parr, 324 So.2d 441 (La.1975); Holt v. Singletary, 441 So.2d 330 (La.App. 5th Cir.1983); Sumner v. Foremost Ins. Co., 417 So.2d 1327 (La.App. 3rd Cir.1982); Goudchaux v. State Farm Fire & Cas. Co., 407 So.2d 1317 (La.App. 3rd Cir.1981), writ denied, 412 So.2d 1114 (La.1982).
The first inquiry in making a determination of strict liability for damages caused by a defect in a thing is whether the thing was in the care or control of the defendant at the time the accident occurred.
The doctrine of strict liability of a landowner under LSA-C.C. art. 2317 for vices or defects in his property had its Louisiana origins in Loescher v. Parr, supra at pp. 446, wherein the Supreme Court stated:
When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible ... for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others. (Emphasis added)
See also Lloyd Aguillard, Sr. v. Lester Langlois and State Farm Fire and Casualty Company, 471 So.2d 1011 (La.App. 1st Cir.1985). Stated another way, liability under LSA-C.C. art. 2317 arises from the legal relationship between the person sought to be held liable and the thing which creates an unreasonable risk of injuries. The fault of the person thus liable is based upon his failure to prevent the thing for which he is responsible from presenting such unreasonable risk of injury to others. Goudchaux v. State Farm Fire & Cas. Co., supra.
In the case sub judice, the evidence clearly establishes that the barbed wire fence and gate were in the care or custody of John Sanders at the time of the accident. Although, Danny "leased" 150 acres of John's farm and, in fact, used all of John's property, all gates and fences were owned and paid for by John. All repairs of those gates and fences were performed at John's direction and were paid for by him. John often took part in the actual repair of these things. Although Danny was using the farm, he never took control of the fences and gates or their maintenance. At all times, the gate which allegedly caused Charles' injury was in John's care and control.
*1215 If we are to find defendant John Sanders strictly liable for plaintiff's harm, we must next determine whether the thing which caused the harm was defective.
A defect is some flaw or fault existing or inherent in the thing itself that creates an unreasonable risk of harm to others. McKinnie v. Dept. of Trans. & Development, 426 So.2d 344 (La.App. 2nd Cir.1983), writ denied, 432 So.2d 266 (La. 1983); Naylor v. La. Dept. of Public Highways, 423 So.2d 674 (La.App. 1st Cir.1982), writs denied, 427 So.2d 439, 429 So.2d 127, 134 (La.1983); Brown v. Winn-Dixie Louisiana, Inc., 417 So.2d 44 (La.App. 1st Cir. 1982), on remand, 460 So.2d 6 (La.App. 1st Cir.1985). Not every defect can serve as a basis for a claim; the defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Campbell v. Tidwell, 407 So.2d 1359 (La.App. 3rd Cir.1981).
In determining whether the risk posed by a thing is "unreasonable," the courts must consider the moral, social, and economic values as well as the ideal of justice in reaching an intelligent and responsible decision. Entrevia v. Hood, 427 So.2d 1146 (La.1983). In Entrevia v. Hood, supra at 1149, the Louisiana Supreme Court, citing Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971), stated:
[T]he activities of man for which he may be liable without acting negligently are to be determined after a study of the law and customs, a balancing of claims and interests, a weighing of the risk and the gravity of harm, and a consideration of individual and societal rights and obligations.
Barbed wire is inexpensive, is readily available on farms, and provides an easy and cheap method of fastening gates. Barbed wire is loosely twisted and has spring. When twisted around a gate to keep the gate closed, it is likely that if the piece of barbed wire slips out of one's hand when being unwound, it will spring back with some force, causing a great risk of cuts and other injuries. When being handled by someone of little experience, like a thirteen year old boy, without any warning or assistance, the risk becomes greater.
Other materials such as rope, chain or latches are as inexpensive and as available to farmers as barbed wire. They are just as easily installed and used. These other materials, if used on the gate where Charles was injured, would have prevented this accident. Clearly, the barbed wire gate fastener posed an unreasonable risk of injury which was easily preventable by using one of several viable alternatives.
Our last inquiry is whether the defect caused the injury. In this instant case, Charles Varnado was a thirteen year old farm boy, who was injured while untwisting a piece of barbed wire used to secure a gate. Charles was opening the gate to let dairy cows into another pasture. After untwisting the wire, he released it, whereupon it sprang back striking him in the eye. He was struck by the tip of the wire, not a barb. Clearly, the defective thing caused plaintiff's injury.

PLAINTIFF'S ASSIGNMENTS OF ERROR NOS. 5 & 6
John Sanders argues that Charles assumed the risk of injury or, in the alternative, was contributorily or comparatively negligent.
In order to assume a risk, a plaintiff must have some knowledge of the danger, appreciate and understand the risk involved, and voluntarily expose himself to such risks. Prestenbach v. Sentry Ins. Co., 340 So.2d 1331 (La.1976); Bass v. Aetna Ins. Co., 370 So.2d 511 (La.1979); Chappuis v. Sears Roebuck & Co., 358 So.2d 926 (La.1978); Dorry v. Lafleur, 399 So.2d 559 (La.1981); Fritscher v. Chateau Golf & Country Club, 453 So.2d 964 (La.App. 5th Cir.1984), writ denied, 460 So.2d 604 (La.1984).
As previously stated, Charles was a thirteen year old boy at the time of the *1216 accident. He had worked with barbed wire before the accident and had passed through the gate where he was hurt many times. We are certain that he knew to be careful of the barb on the wire, but it was the tip of the wire, not its barb that blinded Charles. Although he may have had some knowledge of the propensity of coiled barbed wire to spring, because of his tender age, we cannot say he appreciated and understood the risk he was taking in order to voluntarily expose himself to that risk. We, therefore, conclude that Charles did not assume the risk of injury.
Considering John Sanders' argument that Charles was contributorily or comparatively negligent so as to preclude recovery, LSA-C.C. art. 2323 states:
When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
In Dorry v. Lafleur, supra, the Louisiana Supreme Court stated:
Where a plaintiff's negligence contributes to his own damage, there is no reason to ignore his fault in every case simply because the defendant's liability is based on some legal fault other than negligence. Quite to the contrary, the plaintiff's negligence should carry more, nor less, consequence when the defendant is strictly liable, but less culpable than the plaintiff.
The idea that contributory negligence is not a defense in a strict liability case was borrowed from the common law. Prosser, Law of Torts, 4th, page 522 attempts a justification:
`It frequently is said that the contributory negligence of the plaintiff is not a defense in cases of strict liability. This involves the seemingly illogical position that the fault of the plaintiff will relieve the defendant of liability when he is negligent, but not when he is innocent. The explanation must lie in part in the element of wilful creation of an unreasonable risk to others by abnormal conduct which is inherent in most of the strict liability cases; and in part in the policy which places the absolute responsibility for preventing the harm upon the defendant, whether his conduct is regarded as fundamentally anti-social, or he is considered merely to be in a better position to transfer the loss to the community.'
Such is not the case in Louisiana. As we have interpreted the code, strict liability has been found in circumstances or conduct apparently innocuous. Buckley's pet dog, Bucher's bicycle riding child, and Parr's magnolia tree were neither ultrahazardous nor unnatural to the locality, and produced no income to the defendant. There is no policy reason to deny to these strictly liable defendants the defense of contributory negligence. (footnotes omitted)
The court in Dorry went on to say that "under what circumstances a plaintiff's contributory negligence should bar his recovery in a strict liability case should be developed on a case by case basis."
In the instant case, we find no reason for not applying contributory negligence as a defense to plaintiff's action of LSA-C.C. art. 2317. In Dorry, the court refused to apply contributory negligence as a defense to plaintiff's claim under LSA-C.C. art. 2322 on the ground that the "ruined" building housed a commercial enterprise to which plaintiff had paid the price of admission. The court in dicta in Langlois v. Allied Chemical Corporation, supra, found that contributory negligence was not applicable as a defense to plaintiff's claim against defendants for strict liability for ultrahazardous activities. There are no deep, underlying policy reasons which would prevent our application of contributory negligence as a defense to strict liability in the case at bar. See Stewart *1217 v. Sam Wallace Indus. Co., 409 So.2d 335 (La.App. 1st Cir.1982), writ denied, 413 So.2d 497 (La.1982). Under the facts of this case, we hold that contributory negligence and, therefore, comparative negligence may be used by John Sanders as an Article 2317 strict liability defense. Cf. Bell v. Jet Wheel Blast, Div. of Ervin Ind., 462 So.2d 166 (La.1985).
Clearly, the conduct of plaintiff in the instant case was a cause of the harm-producing incident. The evidence reveals that plaintiff understood that he should exercise care in working with barbed wire, but that in this instance was somewhat careless.
Therefore, we conclude that Charles did contribute to his injury with some lack of care, and in light of the evidence in the record, we assign 20% of the fault to Charles and the remaining 80% of the fault to John Sanders.[6]

PLAINTIFF'S ASSIGNMENT OF ERROR NO. 8
Plaintiff requests attorney's fees for answering Hartford's appeal and for the prosecution of his own appeal.
Hartford and John Sanders were relieved of any liability to plaintiff on the claim for worker's compensation and on third party demand, which includes all attorney's fees assessed by the trial court. Consequently, plaintiff is not entitled to attorney's fees for this appeal.

PLAINTIFF'S ASSIGNMENTS OF ERROR NOS. 9, 10 & 11
These assignments of error involve the trial court's acceptance or rejection of certain witnesses as experts and the assessment of their fees as costs. All of these matters are left to the wide discretion of the trial judge. Our review of the record indicates no abuse of the trial court's discretion. There is no merit in these assignments of error.

PLAINTIFF'S ASSIGNMENTS OF ERROR NOS. 7 & 12

(QUANTUM)
In determining quantum, depositions of the two physicians who treated Charles were placed into evidence in lieu of live medical testimony. From these depositions, we are apprised of the nature and extent of Charles' injury.
When the barbed wire struck Charles in his left eye, he suffered a corneal laceration and the loss of his iris and lens. His vision in that eye, while not precisely determined, is worse than 20/200 without correction. Charles' vision is correctable from 20/50 to 20/70 in the injured eye with the use of a "piggyback" contact lens, which consists of a soft contact lens with a hard contact lens placed on top. Since Charles' pupil is no longer round, "piggyback" contacts are particularly uncomfortable. Charles has had much trouble with the "piggyback" contact lens. One doctor testified that no medical expert knows how to fit a comfortable contact lens which can be worn for an extended period on an eye as distorted as Charles'. Even with the contact lens, Charles needs glasses to see close with his left eye, and glare remains a problem.
A corneal transplant might be done, but it is described as a major operation with a 10-15% chance of failure. The doctors could not predict the chances for success in Charles' case at this particular time, but one doctor was of the opinion that there is a possibility Charles "could be worse off with a transplant." Even if successful, Charles will still have a problem with glare and need to wear a contact lens for otherwise *1218 normal vision. Charles is, in effect, blind in his left eye.

A. DAMAGES IN TORT
In assessing damages against John Sanders, the record is sufficiently complete to determine quantum without remanding the case to the trial court for that purpose.[7]
Charles was thirteen years old at the time of the accident. It is likely that he will live the remainder of his life without the effective use of his left eye. Plaintiff did not prove any loss of income by a preponderance of evidence. An economic expert gave the court a formula which could be used to calculate loss of income over Charles' work life expectancy. Use of the formula involves an unknown variable, monthly loss of income. Plaintiff did not prove to any degree of certainty what that variable might be once Charles secures a permanent job. While we can certainly sympathize with plaintiff that loss of future income is difficult to prove in the case of a minor, we can not speculate as to damages without some certain proof.
There is ample proof of past and future loss of use of the eye, pain and suffering and disfigurement. Medical and lay testimony establishes proof of some of these damages to a reasonable degree of certainty. Proof of loss of use is supported by the testimony of Charles as well as that of an expert occupational therapist and vocational evaluator. Further, common sense and experience dictates the conclusion that the loss of his eye might not affect Charles' income in the future, but certainly this loss will have some effect on practically everything he does on both a personal and professional level in the future.
We find that from the particular facts of the instant case, plaintiff is entitled to an award of $150,000.00 in general damages.[8] This award is subject to reduction in proportion to the percentages of fault assigned previously in this opinion.
B. WORKER'S COMPENSATION BENEFITS
Plaintiff also contends that he is entitled to the maximum worker's compensation *1219 benefits, as well as penalties and attorney's fees.
LSA-R.S. 23:1221 provides in pertinent part:[9]
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
* * * * * *
(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, ... during the period of disability, but not beyond a maximum of ... four hundred fifty weeks for such partial disability....
(4) In the following cases, the compensation shall be as follows:
* * * * * *
(i) For the loss of an eye, sixty-six and two-thirds per centum of wages during one hundred weeks.
As pointed out by the Louisiana Supreme Court in Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982):
The statute does not explicate the relationship between the specific loss schedule and the total and partial disability provisions. In a case in which a specific loss also results in total or partial disability for the worker, the act does not give either remedy priority or state whether the remedies are cumulative or optional.
However, the court in Jacks v. Banister Pipelines America, supra, held that:
In order to assure that the employee is permitted to recover under whichever provision affords him greater compensation, he should be awarded compensation for the specific loss as a minimum with reservation of his right to recover under the partial disability provision in the event it proves to be the more favorable. (footnote omitted)
In the case sub judice, the medical evidence established that while Charles Varnado has some vision in his left eye, he, "for all practical purposes, is legally blind and totally blind" in that eye. With correction and/or a corneal transplant, Charles' vision could be greatly improved. However, in Bordelon v. Vulcan Materials Company, 472 So.2d 5 (La.1985), the Louisiana Supreme Court, citing Jenkins v. Orleans Parish School Board, 310 So.2d 831 (La.1975), held that an employee's loss of function is evaluated and compensable based on his natural body's loss of function, even though man-made artifices may temporarily alleviate the loss of function.
Clearly, Charles has suffered the permanent loss of the use of his left eye. He was, however, able to and returned to work after the accident, performing substantially the same duties as he had prior to the accident.
In his amended judgment, the trial judge rendered the following judgment, in pertinent part:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Harvel Wilson Varnado, individually, and on behalf of his minor son, Charles Arthur Varnado, and solidarily against Danny Sanders and John Sanders for 100 weeks of workmen's compensation benefits pursuant to La.R.S. 23:1221(4)(i) based on an average weekly wage of $50.00 per week, within the applicable limits set by La.R.S. 23:1202, subject to a credit of four weeks previously paid, reserving unto plaintiffs the right to claim partial disability benefits pursuant to La.R.S. 23:1221(3), with legal interest thereon from date his workmen's compensation benefits accrued until paid, including all medical expenses, and particularly the sum of *1220 $2,329.75, with legal interest thereon from date of judicial demand until paid, plus 12% penalties on all past-due workmen's compensation benefits, attorney's fees in the sum of $3,500.00, and all costs in connection with the workmen's compensation claim.
We find that the trial judge correctly found that Danny Sanders is liable to plaintiff for worker's compensation benefits under LSA-R.S. 23:1221(4)(i), with reservation of the right to recover under the partial disability provision LSA-R.S. 23:1221(3) in the event it proves to be the more favorable.
The trial judge was also correct in assessing penalties and attorney's fees against Danny. Danny arbitrarily and capriciously stopped paying Charles compensation after Charles returned to work four weeks after the accident, when it was clear at that time that Charles had suffered the permanent loss of the use of his eye.
Under LSA-R.S. 22:658, an insurer is liable for penalties and attorney's fees when it is arbitrary and capricious in failing to pay compensation benefits. Under LSA-R.S. 23:1201.2, the employer who "is not covered by insurance" (as is the case with Danny), is subjected to the same penalty. Fontenot v. Great Southern Oil & Gas Co., 434 So.2d 621 (La.App. 3rd Cir. 1983); Chipman v. Insurance Co. of North America, 389 So.2d 432 (La.App. 2nd Cir.1980); Gauthier v. Employers National Insurance Co., 316 So.2d 769 (La. App. 1st Cir.1975), writ refused, 320 So.2d 911 (La.1975). See also Shatoska v. Intern. Grain Transfer, Inc., 430 So.2d 1255 (La.App. 1st Cir.1983) and Thomas v. Employers Insurance Co. of Wausau, Wis., 239 So.2d 701 (La.App. 1st Cir.1970)[10].
Therefore, the trial court correctly determined that Danny is liable to plaintiff for the maximum statutory benefits, as well as penalties and attorney's fees.

CONCLUSION
For the above and foregoing reasons, the amended judgment of the trial court holding Danny Sanders liable for payment of worker's compensation benefits, in the amount of 66 2/3% of $50.00 per week for 100 weeks under LSA-R.S. 23:1221(4)(i), with reservation of the right to recover benefits under LSA-R.S. 23:1221(3) in the event it proves to be the more favorable, with legal interest thereon from date of accrual until paid, 12% penalties on all past due worker's compensation benefits, and attorney's fees of $3,500.00 is affirmed.
That portion of the trial court's amended judgment casting John Sanders and Hartford liable for worker's compensation benefits, penalties and attorney's fees, on both the main and third party demands, is reversed. Danny Sanders' third-party claim is hereby dismissed with prejudice.
The portion of the amended judgment of the trial court dismissing plaintiff's personal injury claim against John Sanders and Commercial Union Assurance Company is reversed. Judgment is hereby rendered in favor of plaintiff and against John Sanders and Commercial Union Assurance Company, in solido, for $150,000.00, together with legal interest thereon from date of judicial demand until paid, subject to a reduction of 20% for the percentage of fault assigned to plaintiff herein.
In all other respects, the judgment of the trial court is affirmed. Defendants are cast, in solido, for all costs.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

On Application for Rehearing.
PER CURIAM.
It has been called to our attention in an application for rehearing that we rendered judgment against Commercial Union Assurance *1221 Company in excess of its policy limits. We intended to and now limit the liability of Commercial Union Assurance Company to its policy limits of $100,000.00 plus legal interest and costs.
Rehearings Granted.
NOTES
[1] Danny Sanders "leased" 150 acres for the dairy farm from his father, John Sanders, but was permitted to use the entire 250 acres of his father's land for the dairy farm. No rent was ever paid by Danny Sanders to his father for use of the land. The accident occurred off the "leased" portion, but on John Sanders' land.
[2] Treatment of the extent of injury is found in our discussion of Plaintiff's Assignments of Error Nos. 7 and 12 (Quantum).
[3] Plaintiff lists and briefs twelve "issues of law." For purposes of review, they will be considered as assignments of error.
[4] This is clearly reflected in the first deposition of John Sanders taken August 4, 1982. In that deposition, Mr. Sanders stated that the extent of his participation was to help his son until he got on his feet. The only suggestion that a joint venture existed was supplied by counsel for Mr. Sanders in the form of repeated objections to questions concerning participation in the dairy business. In the second deposition taken on June 28, 1983, John Sanders' testimony progressed to an intimation that there was a joint venture, although he stated that Danny began his (Danny's) dairy operation about March of 1980, and that he (John) had ceased operating a dairy farm some eight years earlier. At trial on December 13 and 14, 1983, John Sanders' testimony could be construed as evidencing a joint venture, however, even at trial John Sanders stated, as he had in the previous depositions, that this was "Danny's business." The joint venture asserted by the Sanders appears to be more of a well planned but wishful defense vis-a-vis a conclusion to be drawn from the extant facts.
[5] There was some problem with proper service of process in plaintiff's claim for worker's compensation against John Sanders and Hartford.

There was no problem with service on John Sanders in plaintiff's tort claim against him.
[6] In Bell v. Jet Wheel Blast, Div. of Ervin Ind., 462 So.2d 166 (La.1985), the Supreme Court designated the trial courts to supply a comparative negligence rule. Since the record is complete, and this court is in as good a position as the trial court to reach a decision, no useful purpose would be served by a reversal and remand of this case. We have reviewed the entire record and have concluded that the appropriate percentages are as set forth herein. Cf. Thomas v. Missouri Pacific R. Co., 466 So.2d 1280 (La.1985); Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980); Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
[7] See Footnote 5 supra.
[8] In determining the general damage award, we were guided by awards for similar injuries, which indicated that awards in similar cases ranged from $25,000 to $300,000. See Walker v. Champion, 288 So.2d 44 (La.1973), in which the trial judge's award of $100,000 for loss of eye was held not to be an abuse of discretion; Borne v. Bourg, 327 So.2d 607 (La.App. 4th Cir.1976), an award of $30,000 for loss of sight, pain and suffering, past and future loss of income was held not to be excessive and within trial judge's "much discretion"; Fairchild v. Brian, 354 So.2d 675 (La.App. 1st Cir.1977), in which the court upheld a $25,000 award for loss of eye to elderly woman in medical malpractice case; Outlaw v. Bituminous Ins. Co., 357 So.2d 1350 (La.App. 4th Cir.1978), writ denied, 359 So.2d 1293 (La.1978), where a 9-year-old who was blinded in one eye when hit with golf ball was awarded $150,000; Batiste v. Iberia Parish School Bd., 401 So.2d 1224 (La.App. 3rd Cir.1981), writ denied, 405 So.2d 531 (La.1981), in which general damages were raised by appellate court to $90,000, which was held to be the lowest award the district court could have reasonably reached for an 11-year-old who lost vision when stabbed in eye with ball point pen; Granger v. Montgomery Ward & Co., Inc., 408 So.2d 320 (La.App. 3rd Cir.1981), writ denied, 412 So.2d 1097 (La.1982), where the court awarded a 45-year-old man $100,000 specifically for loss of vision to left eye when car battery exploded in his face; Noel v. Demouchette, 410 So.2d 1291 (La.App. 3rd Cir. 1982), where plaintiff, who was hit in eye with shotgun pellet and whose vision was reduced to a blur, was awarded $25,000. Such award was noted as the "lowest point which is reasonably within the discretion afforded to this Court," considering the facts of the case. See also Benson v. Seagraves, 445 So.2d 187 (La.App. 3rd Cir.1984), writ denied, 447 So.2d 1071 (La.1984), in which the court found that although low, an award of $100,593 for loss of sight in one eye, facial disfigurement, loss of sense of smell, permanent disability in use of one ankle and brain damage to plaintiff in automobile accident was within the "much discretion" of the jury; Martin v. Gulf South Beverages, Inc., 454 So.2d 250 (La.App. 5th Cir.1984), where a 24-year-old man who suffered loss of sight to 20/100, but correctable to 20/30 if contact could be properly fitted was given an "in globo" award of $300,000; Harper v. Liggett Group, Inc., 459 So.2d 1260 (La.App. 1st Cir.1984), writ denied, 462 So.2d 655 (La.1985), in which a 27-year-old dentist rendered "legally blind" by handle of racquetball racquet which separated from butt cap was awarded $100,000.
[9] This accident occurred on May 27, 1981, so it is controlled by the worker's compensation statutes as they existed prior to Acts 1983, No. 1 § 1, effective July 1, 1983.
[10] However, under LSA-R.S. 23:1201.2, as amended by Acts 1983, No. 1 § 1, effective July 1, 1983, any insurer and any employer not covered by workmen's compensation insurance is liable for attorney's fees for arbitrary and capricious denial of compensation benefits. There is no longer a penal provision in this statute. The new provision also expressly provides that "the provisions of R.S. 22:658 shall not be applicable to claims arising under this chapter."