464 So.2d 902 (1985)
Carolina HERNANDEZ
v.
SCHWEGMANN GIANT SUPERMARKETS, et al.
No. CA-2304.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1985.
*903 Julian R. Murray, Jr., Romualdo Gonzalez of Murray, Murray, Braden, Landry & Gonzalez, New Orleans, for appellee.
C. Monk Simons, III, New Orleans, for appellants.
Before GULOTTA, BYRNES and CIACCIO, JJ.
CIACCIO, Judge.
Carolina Hernandez filed suit to recover damages resulting from her false detention and arrest by a security guard employed by Schwegmann Bros. Giant Supermarkets, Inc. A jury rendered judgment for the plaintiff and awarded her damages of $23,000. The defendants appeal this judgment and we affirm.
The facts surrounding this incident are in conflict.
On May 28, 1979 at approximately midday, the plaintiff and her twelve year old son were shopping at the defendant's supermarket located at 5300 Old Gentilly Road in New Orleans. According to the plaintiff, she selected several meat items during her shopping tour. She chose, among other items, two roasts. However, being of the opinion that she only needed the smaller roast, she returned the second roast to the meat freezer. She spent approximately 50 minutes shopping and checked out of aisle number 19 where she paid $160 for her purchases. According to Ms. Hernandez, shortly after making her purchases, she was confronted by Albert Roger, a security guard employed by the supermarket. Mr. Roger told the plaintiff that he needed to check a discrepancy and he then began to search Ms. Hernandez's grocery bags. Mr. Roger took a roast from the bag and instructed the plaintiff to go with him to the meat department, which she did. The roast was given to a woman in the meat department and she was instructed to weigh the roast. According to the plaintiff, the roast was weighed out of the presence of herself and the security guard. During this time, Mr. Roger was searching through the roast section of the meat counter, but he did not find anything. The plaintiff was then escorted back to the security office and told that there was a discrepancy in the actual cost of the roast and the amount she paid for it. Ms. Hernandez then offered to pay the difference, but she was told that she should relinquish her driver's license, sit down, and "shut up." The plaintiff was not afforded an opportunity for an explanation. The New Orleans police were called and, while awaiting their arrival, the plaintiff expressed concern for her son. Ms. Hernandez was allowed to call her family so that they could come to retrieve the boy. The plaintiff was instructed that her son would be turned over to juvenile authorities if her family did not arrive in time to take custody of the boy before the local police were ready to escort her to Central Lockup. The plaintiff's brother-in-law arrived and Ms. Hernandez gave him custody of her minor son and also the keys to her car. She was escorted by the New Orleans police through the parking lot to an awaiting patrol car. She was then taken to Central Lockup where she was searched, her valuable possessions were taken for inventory and she was placed in a holding cell. She was later fingerprinted and photographed and then returned to the cell to await her release on bond. Approximately four hours following her arrest, Ms. Hernandez was released when her brother-in-law posted a bond on her behalf.
The plaintiff thereafter secured medical treatment and hired an attorney to represent her on the criminal charges involved. *904 The plaintiff went to court two times on the criminal charge, but each time the complaintant failed to appear and the charge was thereafter dismissed.
Albert Roger, the Schwegmann security guard, gave a different recitation of the facts. He testified that on the date in question he observed the plaintiff select two roasts and place both roasts in her shopping cart. She was then seen leaving the meat counter and she proceeded into the hardware department. While in the hardware section of the store, according to Mr. Roger, the plaintiff was observed switching the price tags of the two roasts. Mr. Roger stated that he observed the price on the tags as being $6.85 and $9.10, respectively. He further stated that the $6.85 tag was placed on the roast worth $9.10 and the $9.10 price tag was discarded in a trash can in the hardware department. The smaller roast was then deposited, by Ms. Hernandez, back into the meat freezer in the section reserved for roasts. The defendant testified that he then attempted to retrieve the roast from the meat counter, but he was unsuccessful, as there were several roasts without price tags. His attempts to recover the discarded price tag also proved unsuccessful as the porter had already emptied the trash from the container.
Roger testified that he stopped Ms. Hernandez after the cashier had checked her out and he told her there might be a problem with the price of the meat, so he wanted her to accompany him to the security office. They thereafter went to the meat counter where the subject roast was weighed in their presence and a price of $9.90[1] was revealed. Roger then informed Ms. Hernandez that there existed a $3.10 price difference and that it was the store's policy to detain her for the local police. Roger thereafter summoned the police and prepared a report of the incident. The New Orleans police arrived and removed Ms. Hernandez to Central Lockup.
The issues presented on appeal are: Did the defendant have reasonable grounds to believe a theft was committed, so as to result in their immunity from suit? Did the jury err in awarding damages in the amount of $23,000? and, Did an unfavorable presumption arise because of the plaintiff's failure to call the dermatologist who treated her?

Liability
The defendants contend that they are immune from tort liability because their actions in detaining and arresting the plaintiff were grounded upon a reasonable belief that she had committed a theft. See: C.Cr.P. Art. 215.
This Court, in Duhe v. Schwegmann Brothers Giant Super Markets, 384 So.2d 1019 at 1019-1020, addressed this issue:
It has been made statutorily and jurisprudentially clear that a merchant is entitled to make a reasonable investigation and to exercise reasonable force to detain a person for questioning, where reasonable cause exists to believe the person detained has committed a theft of merchandise. LSA-C.Cr.P. article 215; Thompson v. LeBlanc, 336 So.2d 344 (La.App. 1st Cir.1976), writ refused 339 So.2d 26 [La.]; Mullen v. Schwegmann Brothers Giant Super Market, Inc., 378 So.2d 510 (La.App. 4th Cir.1979); Levy v. Duclaux, 324 So.2d 1 (La.App. 4th Cir. 1975), writ refused 328 So.2d 887 [La. 1976]; Brown v. Hartford Ins. Co., 370 So.2d 179 (La.App. 3rd Cir.1979); Sapp v. J.A. West Co., 352 So.2d 268 (La.App. 2nd Cir.1977), writ denied, 353 So.2d 1337 (La.1978).
The determination of whether a proprietor has reasonable cause to detain an individual suspected of shoplifting is a factual question and, as such, will not be reversed absent a clear abuse of discretion. Brown v. Hartford Insurance Co., 370 So.2d 179 (La.App., 3rd Cir., 1979) citing Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978).
In this case the existence (or non-existence) of reasonable cause rested upon a *905 credibility determination. Clearly the jury accepted the testimony of Ms. Hernandez and rejected that of the defendants. Ms. Hernandez stated unequivocally that, on the date in question, she never removed a tag from any piece of roast, that she had never changed the tags on the two roasts nor had she thrown a meat price tag in the garbage can in the hardware department.
Under these circumstances, the jury apparently resolved that defendants did not have a reasonable basis to conclude that a theft had been made and that the defendants were, therefore, not justified in detaining or arresting the plaintiff. We find no abuse of discretion by the trier of fact in this regard.

Quantum
The defendants contend that the jury's award of $23,000 was excessive as she was only treated by physicians for two months and she never missed work as a result of this incident.
In order for an appellate court to disturb a damage award, the record must clearly reveal that the trier of fact abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.,1977). In reaching a determination that an award is excessive, the reviewing court must evaluate the particular injuries and their effects upon this particular injured person. Reck v. Stevens, 373 So.2d 498 (La.,1979). Only after a determination of abuse has been made, is a resort to prior awards appropriate. Reck v. Stevens, supra.
The appellate court may then disturb the award only by lowering the award to the lowest point which is reasonably within the discretion afforded the Court. Coco v. Winston Industries, Inc., supra.
Carolyn Hernandez, a native of Cuba and a United States resident since 1961, was at the time of this incident employed by the University of New Orleans as an associate librarian. Ms. Hernandez stated that she held a doctor of philosophy degree and an advertising degree. She worked at Harvard University for five years after entering the United States and she later joined the staff at the University of New Orleans as an associate librarian. She is married to Ricardo Hernandez, a certified public accountant and a comptroller for the Sentry Hotel Corp. The couple have three sons who were minors at the time of this incident. The plaintiff has never before been detained for suspicion of a crime nor has she been arrested before this incident.
On the date of this incident the plaintiff's purchases were searched. She testified that the security guard took a piece of meat from her grocery bag and told her to go with him to the meat department. She was only told at the institution of this search that the defendant needed to "check a discrepancy". After she was taken to the meat department she was told that there was a difference in the price of her roast from what it weighed and what the tag on the roast indicated. She stated that she was not allowed to give an explanation and when taken to the security office she was treated rudely. She was told to relinquish her license, to "keep her mouth shut, and sit down." She was kept in the security office for three hours. This incident occurred in the presence of her twelve year old son.
When Ms. Hernandez became nervous and upset and expressed concern about her son, she was allowed to call a relative to retrieve the boy. She was, however, informed that if someone did not arrive to take her son home before the police authorities were ready to take her to jail that her son would be turned over to the juvenile authorities.
Ms. Hernandez testified that she offered to pay the difference in price but she was told that she would be taken to Central Lockup. After the police arrived she was again not afforded an opportunity for explanation. Rather, she was escorted across the parking lot, in view of several people, to the awaiting police car. During this walk the policemen stopped to talk to a friend, which according to the plaintiff, caused her additional embarrassment.
*906 Once she arrived at Central Lockup, the plaintiff was searched, she was temporarily dispossessed of her valuable possessions and placed in a cell. She was fingerprinted, her photograph was taken and she was returned to the cell. This entire incident took approximately eight hours.
She was caused to hire a criminal defense attorney at an expense to her of $750 and she was made to appear twice in court in response to the criminal charges.
The plaintiff, who was formerly a very controlled person, became very nervous as a result of this occurrence. She remained upset for approximately ten months, according to her husband. Although she had been a good sleeper before this time, she did not sleep at all on the night of this occurrence. Additionally, she continued to sleep very little even with the aid of medication. This fact was corrorabated by her husband.
As a result of this experience, Carolina Hernandez sought the medical assistance of her family physician, Dr. Pedro Angulo.
Dr. Angulo testified that prior to this incident he knew the plaintiff and her family for 11 or 12 years. He stated that the plaintiff was in good health with minimal ailments before this incident. However, when she visited Dr. Angulo in May, 1979, Ms. Hernandez was very nervous, agitated and depressed over this experience. Ms. Hernandez's physician prescribed Librax and Valium for her nervous condition and Dalmane for the insominia.
Some two weeks after this first visit to Dr. Angulo, the plaintiff developed a skin rash over two of her arms and her chest. On August 7, 1979 the rash again appeared, following some problems the plaintiff experienced on her job. However, the rash was worse than usual because of the plaintiff's nervous state. Dr. Angulo referred the plaintiff to a dermatologist who prescribed Atarax. Dr. Angulo testified that his findings were consistent with the history as relayed by the plaintiff. Additionally, he was of the opinion that with a reasonable medical certainty the rash was related to the episode that occurred at Schwegmann's Supermarket.
The plaintiff's job performance was affected as a result of this incident. She had problems concentrating. She was also very nervous and attributes this as the overriding reason why she stepped down as the head of her department at the university to that of the associate's position.
The plaintiff testified that she still suffers ill effects, as the incident is brought to mind when she sees advertisements for the defendant's store. She stated that she lives with a fear that such an incident could again occur.
The plaintiff contends that she continued to experience the ill effects of this incident at the time of trial. She points to the fact that while relaying the facts of this situation to the court she became so upset that the court offered a recess in order to allow her to regain her composure.
We have considered the effects of this false detention and arrest upon this plaintiff in terms of the physical and mental pain and suffering and its impact upon her professional and personal life and we conclude that the lump sum damage award of $23,000 granted by this jury is not clearly wrong.
The question is not whether a different award might be more appropriate but whether the trial court's award can be reasonably supported by the evidence. The fact that the evidence might also support a lesser award will not justify a change in the amount. Erdey v. Steib, 392 So.2d 131 (La.App., 1st Cir., 1980).
Although this award may at first appear to be within the upper range of awards for such cases, it is supported by the evidence. Moreover, the jury had the opportunity to observe the witnesses and evaluate their credibility. Under these circumstances we cannot say that the jury was clearly wrong in awarding damages in the amount of $23,000.
For these reasons the jury did not err in its damage award to Carolyn Hernandez.
*907 Finally, defendants contend that the plaintiff's failure to call Dr. Koppel, the plaintiff's dermatologist, creates a presumption that his testimony (especially with regard to causation of the plaintiff's skin rash) would have been unfavorable.
The law is clear that the adverse presumption regarding an uncalled witness does not arise in those instances in which the witness in question is equally available to both parties. Young v. State Farm Fire & Casualty Insurance Co., 426 So.2d 636 (La.App., 1st Cir., 1982), writs den. (La.1983), 433 So.2d 148 and 171.
In this case there has been no showing that Dr. Koppel was not equally available to the defendants as well as the plaintiff. Accordingly, we find that the adverse presumption did not arise as this witness could have been called by the defendants. Moreover, the testimony of Dr. Angulo established, with medical certainty, the existence of causation between this incident and the plaintiff's skin rash.
For the reasons assigned the judgment of the district court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] The price tag admitted into evidence indicates a price of $9.95.