621 So.2d 843 (1993)
Bernadette FONTENOT, et al., Plaintiff-Appellant,
v.
Cleveland P.Z. FONTENOT, et al., Defendant-Appellee.
No. 92-1169.
Court of Appeal of Louisiana, Third Circuit.
June 19, 1993.
Rehearing Denied August 24, 1993.
Clyde Fontenot, Ville Platte, for Bernadette Fontenot et al.
Lionel H. Sutton, III, Lafayette, for Cleveland P.Z. Fontenot et al.
Before GUIDRY and WOODARD, JJ., and CULPEPPER,[*] J. Pro Tem.
WOODARD, Judge.
This appeal arises out of a claim for personal injuries which plaintiff sustained while she was walking down steps at her in-law's home when she slipped and fell on a piece of firewood that was stacked by the steps.
After a trial on the merits, the trial court ruled in favor of the defendants, stating that strict liability did not apply because "no evidence was adduced to indicate that the steps or the carport by and of themselves were inherently defective." The trial court further noted that under La.C.C. Art. 2315, plaintiff "failed to prove by a preponderance of the evidence that the defendants *844 reasonably knew or should have known of the defect on the premises."
It is from this judgment that plaintiff now timely appeals.

FACTS
On January 4, 1991 at approximately 8:00 a.m., Bernadette Fontenot (Bernadette) went next door to the home of her in-laws, Cleveland and Ella Ruth Fontenot (Fontenots), for the specific purpose of having Mrs. Fontenot baby sit her granddaughter, Lacy. When Bernadette arrived, she entered the home through the carport, like she had done on numerous occasions before. After leaving the child with her mother-in-law, Bernadette exited the house the same way she entered.
Around noontime, Bernadette came back to pick up her child, Lacy. She again entered the Fontenot's home through the carport. She visited with her mother-in-law for thirty (30) to sixty (60) minutes. During this visit, Mrs. Fontenot went out the carport door to retrieve a few pieces of firewood that were stacked by the steps in a tepee form. Mrs. Fontenot and Bernadette continued conversing while Mrs. Fontenot stepped out the door to get the firewood.
At the end of their visit, Bernadette proceeded to go out the same carport door. Bernadette picked up Lacy, while her mother-in-law held the door open for her as she started to descend the steps. They were still talking as Bernadette was walking, and although Bernadette was looking where she was going, Lacy was blocking her view of the steps because she was on her left hip as Bernadette was walking sideways down the steps. During Bernadette's descent, she slipped and fell from the steps to the carport, twisting her ankle on a small piece of firewood. Mrs. Fontenot testified that she saw a little log or limb that Bernadette stepped on which was round in nature and approximately one and a quarter inch to one and a half inches in diameter, and fifteen to sixteen inches long.
Bernadette fell in a sitting position on the cement carport, while holding on to Lacy. Lacy hit her head, but quickly got up and ran off. Later that day, Bernadette testified that, as a result of the fall, she was hurting in the tailbone area and could not sit in a straight position; she also felt pain between her shoulder blades; stiffness of neck; and started to suffer from headaches.
Dr. Charles Aswell, Jr. first saw her. Dr. Aswell took x-rays which showed that the coccyx (tailbone) was out of line and possibly cracked. He gave her some medication to relieve her pain. He later placed her in a neck and rib brace due to complaints of headaches, neck and back pain.
She was also seen by two different orthopedists and a neurosurgeon. She was diagnosed with degenerative disc disease that was probably aggravated by the fall. The neurosurgeon, Dr. Robert Rivet, concluded that Bernadette was a candidate for a bilateral occipital neurectomy due to her persistent headaches.
At the time of trial, Bernadette had incurred over $12,000.00 in medical expenses. The Fontenot's homeowner's insurance company, National Union Fire Insurance Company, has paid $1,000.00 of this amount.
Bernadette appeals, alleging the following assignments of error:
1. The trial court erred in not correctly applying La.C.C. articles 2315 and 2317 and in not finding defendants liable under either theory.
2. The trial court erred in not awarding plaintiff reasonable damages based on the medical testimony.
3. The trial court erred in not allowing Mr. Cleveland Fontenot to testify regarding what Mrs. Fontenot had told him about leaving the log near the steps.

LAW
In order for plaintiff to recover under the theory of strict liability, La.C.C. Art. 2317, plaintiff must prove:
*845 1. the thing which caused damages was in the care, custody and control of the defendant;
2. the thing had a vice or defect which created an unreasonable risk of harm; and
3. the injuries were caused by the defect. Loescher v. Parr, 324 So.2d 441 (La. 1975).
Varnado v. Sanders, 477 So.2d 1205 (La. App. 1 Cir.1985), writ denied, 481 So.2d 630 (La.1986), sets forth the factors that need to be considered when making a determination of when a thing has a vice or defect which creates an unreasonable risk of harm. Varnado, supra at page 1215 states:
A defect is some flaw or fault existing or inherent in the thing itself that creates an unreasonable risk of harm to others. McKinnie v. Dept. of Trans. & Development, 426 So.2d 344 (La.App. 2nd Cir.1983), writ denied, 432 So.2d 266 (La.1983); Naylor v. La. Dept. of Public Highways, 423 So.2d 674 (La.App. 1st Cir.1982), writs denied, 427 So.2d 439, 429 So.2d 127, 134 (La.1983); Brown v. Winn-Dixie Louisiana, Inc., 417 So.2d 44 (La.App. 1st Cir.1982), on remand, 460 So.2d 6 (La.App. 1st Cir.1985). Not every defect can serve as a basis for a claim; the defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Campbell v. Tidwell, 407 So.2d 1359 (La. App. 3rd Cir.1981).
In determining whether the risk posed by a thing is "unreasonable," the courts must consider the moral, social, and economic values as well as the ideal of justice in reaching an intelligent and responsible decision. Entrevia v. Hood, 427 So.2d 1146 (La.1983). In Entrevia v. Hood, supra at 1149, the Louisiana Supreme Court, citing Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971), stated:
[T]he activities of man for which he may be liable without acting negligently are to be determined after a study of the law and customs, a balancing of claims and interests, a weighing of the risk and the gravity of harm, and a consideration of individual and societal rights and obligations.
The trial court found that art. 2317 was not applicable because no evidence was adduced at trial to indicate the steps or the carport, by and of themselves, were inherently defective. We agree.
Since strict liability is no longer available to the plaintiff, in order for her to recover, she must recover under the theory of negligence, La.C.C. art. 2315. In asserting negligence liability against the owner of a thing which causes injury, plaintiff must prove:
1. the thing created an unreasonable risk of injury that resulted in damage;
2. that the owner knew or should have known of the risk; and
3. the owner failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982).
The difference between the two theories is that under strict liability the claimant is relieved of proving that the owner knew or should have known of the unreasonable risk of injury. While the basis for determining the existence of the duty is different in strict liability and negligence cases, the duty which arises is the same. Marziale v. Maney, 529 So.2d 504 (La.App. 4th Cir.1988), writ denied 533 So.2d 22 (La.1988).
The trial court found that under the negligence theory, the plaintiff "failed to prove by a preponderance of the evidence that the defendants reasonably knew or should have known of the defect on the premises." The record shows that Mrs. Cleveland Fontenot testified that she did not recall dropping a piece of firewood when she went to retrieve firewood during Bernadette's visit; that neither she nor Bernadette saw any firewood on the steps before Bernadette made her descent. After a thorough review of the testimony, we agree with the trial court in its finding.
*846 Therefore, because of our affirming the trial court's finding of no liability under either theory of strict liability or negligence, the issue of damages is precluded from discussion.
Lastly, plaintiff contends that the trial court erred in not allowing Mr. Cleveland Fontenot to testify regarding what Mrs. Cleveland Fontenot told him about leaving the log near the steps. Plaintiff submits that this testimony was crucial to her case. It falls under the category of either "not hearsay" or an "exception" to the hearsay rule under La.Code of Evidence art. 803.
La.C.C.P. art. 1636 provides, in pertinent part:
When a court rules against the admissibility of the evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence. In all cases the court shall state the reason for its ruling as to the inadmissibility of the evidence. This ruling shall be reviewable on appeal without the necessity of further formality.
The very purpose of requiring a proffer is to preserve excluded testimony so that the testimony (whatever its nature) is available for appellate review. Without a proffer, appellate courts have no way of ascertaining the nature of the excluded testimony. McLean v. Hunter, 495 So.2d 1298 (La.1986); writ denied, 513 So.2d 1206 (La. 1987), at page 1305.
Because plaintiff did not proffer the excluded testimony, this court has no way of analyzing it and its admissibility. Therefore, the plaintiff is precluded from complaining of the excluded testimony.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the plaintiff.
AFFIRMED.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.