STOKER, Judge.
Harold and Gloria Broussard filed this personal injury suit against Errol Romero and his liability insurer, Continental Casualty Company.[1] Harold Broussard sustained injuries to his face when a tree limb struck him. Harold and James D. Rhodes pushed the tree limb off of a shed located on Romero’s property, and it bounced off of the ground and struck Harold in the face. Gloria Broussard sought damages for loss of consortium. The trial court granted summary judgment for defendants, and plaintiffs appeal. We affirm.
FACTS
Harold Broussard and Errol Romero are brothers-in-law, having married sisters. James D. Rhodes is Romero’s son-in-law and he was generally referred to as “Dusty.”
On July 3, 1990, a thunderstorm caused broken branches to be scattered across Romero’s property. A large limb broke free from a tree and fell across a shed or “wishing well” which Romero owned. The shed was apparently located next to Romero’s swimming pool fronting his driveway.
Rhodes volunteered to go over and help Romero clean up and remove the branches they could remove. On July 4,1990, Romero cleared branches and leaves from the yard and Rhodes cut back the smaller branches from the large limbs which fell across the shed. Romero stated in affidavit that as far as he knew at the time, Rhodes was simply cutting back the large branches which fell across the shed. Romero told Rhodes not to try to move any of the large limbs; Romero was expecting that when Rhodes had finished what he was doing, he would call a tree surgeon to remove the large limbs. Rhodes stated in affidavit that he had finished cutting up everything that was on the ground, so he then took a stepladder to cut up some of the smaller branches that would hinder the removal of the limb which rested across the shed, but he stated he was not going to remove it.
In the meantime, Broussard went to Romero’s house to pick up his wife, Gloria Broussard. He had dropped his wife off at Romero’s house earlier that day so that she could have her hair done by her sister, Romero’s wife. When Broussard returned for his wife, he observed Romero working with some branches at the road. Broussard also observed Rhodes standing on the stepladder cutting a large branch on the shed. Broussard approached Rhodes and suggested that Rhodes take the limb and throw it off the building because Rhodes could cut it easier while it was on the ground.[2] Brous-sard stated that Rhodes said “Yes.” Brous-sard stated that Rhodes grabbed one end of *1269 the limb and he grabbed the other and the two threw the limb off of the shed. Rhodes stated that he told Broussard not to move the limb, but that Broussard did not acknowledge the suggestion, and he was not sure if Broussard heard him. Rhodes stated that it was only after he saw that Broussard was trying to move the limb on his own that he went over to try to help. This difference in the recollections of Broussard and Rhodes is not material with reference to disposal of the case by summary judgment.
Through the efforts of Broussard and Rhodes the tree limb began to fall from the shed and they let go of it. When the limb hit the ground it bounced up and struck Brous-sard in the jaw.
Romero stated that he did not remember seeing Broussard on his property before the accident and did not know he was there. Broussard stated that he told Romero “hello” when he arrived; however, he did not think that Romero knew of his attempt to push the tree limb off of the shed.
Neither Romero nor Rhodes asked Brous-sard to remove the limb, it was Broussard’s idea. Broussard testified that “[wjhen we see something to be done, we do it.”
As this appeal involves the appropriateness of granting a dismissal of plaintiffs’ suit through summary judgment, we think it is proper to set forth certain facts as stated by Harold Broussard in his own words as taken from his deposition (pages 22, 23, 27, 28, 30 and 31):
“Q. And what happened?
A. And he was cutting on that branch. So I said, ‘Dusty,’ I said, “why don’t you take the branch and throw it off the building.’ And I said, ‘When it’s going to hit the ground, you can cut it off on the ground.’ I said, ‘It’s easier.’ He was on a ladder.
Q. Excuse me. Now, let me ask you something so that I understand. He was cutting the branch — he was standing on the ladder, cutting the branch?
A. Yes — well, on this side.
* * * * * *
Q. Was the branch still attached to the tree in any way?
A. It fell off.
Q. It had fallen off completely and was not connected to the tree.
A. (Witness nods affirmatively).
Q. You have to answer, now. Don’t forget.
A. Okay.
Q. And he was cutting off the end of it?
A. No, a piece off of it.
Q. And standing on the ladder. What was he cutting with?
A. A chain saw.
Q. And you went up to him, and you made a suggestion to him?
A. Yes, sir.
Q. And you said, ‘Dusty’ — what did you say? Tell us again.
A. I said, ‘Why don’t we just throw it off the little building?’ I said, ‘When it will hit the ground,’ I said, ‘you can cut it off the ground.’
Q. And what did he say to that?
A. He said, “Yes.’ So he grabbed the other end next to the swimming pool, and I grabbed this end.
[[Image here]]
Q. And Dusty didn’t ask you to remove the branch?
A. No.
Q. You went and you did that on your own; is that right?
A. Yes, sir.
Q. That was your own idea?
*1270 A. Yes, sir.
Q. And when you went there, you were able to see — (Interrupted)
A. It would have been easier to cut on the ground than on the building.
Q. Yes. You were able to see that?
A. Yes, sir.
Q. And you were able to see the way the branch was resting on the shed; is that right?
A. Yes, sir.
Q. And you were able to make a decision as to what was the best way to cut it; is that right?
A. Yes.
Q. And you did all this, Mr. Broussard, voluntarily on your own, without anybody calling you and asking you to do it?
A. No, sir.
Q. Well, you mean, yes, you did it on your own; is that correct?
A. On my own.
Q. And nobody called and asked you to do it?
A. No, sir. When we see something to be done, we do it.
Q. Did you see any kind of a situation that required that you do something immediately? Was anything dangerous about the branch and where it was?
A. No.
Q. Nobody was about to get hurt, if you had stayed away from it?
A. No.
Q. And the way in which you did what you did, pushing the branch off the shed, that was something that was decided and suggested by you?
A. Yes.
Q. And Dusty just went along with it?
A. Yes.
Q. How old is Dusty?
A. About twenty-five (25), twenty-six (26), maybe older. I don’t know.
* * ⅜ * ⅜ *
Q. And was that branch — at the point at which it was connected to the tree, was it rotten or diseased, or was it a healthy branch that the wind had — (Interrupted)
A. It was just a healthy branch that broke.
Q. The wind blew it over, right?
A. Yes.
Q. Now, you have made certain claims in your petition, Mr. Broussard, against Erroll Romero and his insurance company, and I want to ask you about them. One (1) of them is that he allowed a dangerous condition to exist. Do you think that this was a dangerous condition?
A. No, sir.
Q. In failing to take steps to correct the condition, do you think that Romo did something or didn’t do something he should have done — shouldn’t have done or should have done?
A. No, sir.
Q. In failing to warn of the condition, did you need a warning?
A. No.
Q. You were able to see what the condition was, right?
A. Yes, sir.
Q. And you were able to make your own decision as to whether you were going to do something or not to do something?
A. I didn’t think there was any harm in doing it.
Q. Right. But you didn’t need a warning from Romo?
A. No.
Q. You also claim that he didn’t have trained personnel assist in the removal of the tree. Did you need trained personnel?
*1271 A. No, not for that — just one (1) branch.
Q. Or equipment — you didn’t need any other equipment, did you?
A. No.
Q. This accident happened because when you all pushed the tree off, it bounced up and hit you in the jaw, and that’s it, right?
A. Yes, sir.
Q. And you didn’t expect it to do that?
A. No, sir.
Q. When it landed, did it land on ground — on concrete or on dirt?
A. Dirt.”
TRIAL COURT ACTION
The trial court dismissed the Broussards’ action against Romero and his insurer on a motion for summary judgment. The Brous-sards appealed, essentially basing recovery on the following three theories: (1) strict liability; (2) negligence; and (3) vicarious liability.
OPINION
We discern no substantial dispute as to the relevant facts of this ease. The only dispute is whether legal liability results from such facts. The case is appropriate for disposition by summary judgment.
Strict Liability and Negligence
In determining liability in this case the legal analysis need not be complex or extensive. Any liability which Errol Romero and his insurer may have under Articles 2315 and 2317 depends on a showing that Romero exposed Broussard to an unreasonable risk.[3] Obviously, the presence of the fallen limb resting on the shed presented no risk at all. Risk was posed only through tampering with the limb. Left alone there was no inherent danger. In fact, in this case the accident did not occur in the course of pushing the limb off of the shed. The injury was sustained when the limb bounced up and struck Brous-sard upon impact with the ground. Therefore, in this case if there was a risk, it was the risk that someone on the premises would undertake to push the limb off of the shed and that it would bounce off of the ground and cause injury. The duty owed by Romero to such persons would be to warn them not to tamper with the tree limb or attempt to push it off of the shed.
Assuming that some remote risk existed that someone such as Broussard would do as he did, the question is whether the risk was unreasonable. The standard was set forth by the Louisiana Supreme Court in Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988) in which it ruled that assumption of risk was no longer a viable defense to tort actions in Louisiana. In that case the supreme court made the following observation regarding landowners:
“Again, this is not to say that a duty is owed or breached in all situations that involve injury. We have held, for example, that the duty which a landowner owes to persons entering his property is governed by a standard of reasonableness, and that a potentially dangerous condition that should be obvious to all comers is not, in all instances, unreasonably dangerous. See, e.g., Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406, 410-11 (La.1976). However, the key to a finding of no liability in such cases is not the plaintiffs subjective awareness of the risk, but the determination that the defendant did not act unreasonably vis-a-vis the plaintiff, or injure the plaintiff through the instrumentality of an unreasonably dangerous thing in his custody. The determination of what the plaintiff knew regarding the risk of injury is made after fault on the *1272 part of the defendant has been established, and is governed by the comparative fault principles ennunciated in La. Civ.Code art. 2323.”
Murray, at page 1136.
Considering the remoteness of the possibility that a bystander or a visitor would become an actor and, on his own volition, attempt to remove the tree limb from the shed, we do not think that Romero acted unreasonably in failing to warn Broussard of potential danger involved. The risk in question, not being an unreasonable risk, Romero owed no duty to warn. Moreover, if proper analysis requires application of comparative fault principles, we would assess 100% of the fault to Broussard. See Justice Cole’s concurring opinion in Murray, 521 So.2d 1123, 1137. See also Socorro v. City of New Orleans, 579 So.2d 931 (La.1991); and Laiche v. Kohen, 621 So.2d 1162 (La.App. 1st Cir.1993). In Socorro the supreme court commented on Murray and Shelton to say “under duty/risk analysis, if the facts of a particular case warrant, there could be a finding that a defendant owed no duty under the circumstances, or on the other hand, that a plaintiff was 100% at fault.” Socorro, at page 942.
It is perhaps worth adding that it has been held that a temporary condition may constitute a hazard, but it does not constitute a defect as contemplated by LSA-C.C. art. 2317, the source of our doctrine of strict liability. Crane v. Exxon Corp., U.S.A., 613 So.2d 214 (La.App. 1st Cir.1992), writ denied in relevant part, 620 So.2d 858 (La.1993).
Under the circumstances of this case we find that Romero owed no duty to warn Broussard not to tamper with the tree limb. If there was such a duty, under Murray and Socorro, we would find Broussard 100% at fault.
In our view, this case is essentially a negligence ease under LSA-C.C. art. 2315. As a negligence action, and considering the undisputed facts and circumstances of the case, the plaintiffs’ action is governed by the familiar seminal case of Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972) and the cases which have followed and refined the doctrine of that case. Hill v. Lundin places a limit on liability (in that ease a contractor) to hold that persons are not liable for the activities of third persons (causing injury to such third persons) which the person sought to be held liable could not have reasonably anticipated. See also Joseph v. Ennis, 560 So.2d 894 (La.App. 1st Cir.), writ denied, 567 So.2d 108 (La.1990); Giddings v. Commercial Union Ins. Co., 539 So.2d 66 (La.App. 2d Cir.1988), writ denied, 541 So.2d 897 (La.1989); Snider v. Pagragan, 480 So.2d 1053 (La.App. 5th Cir.1985), writ denied, 481 So.2d 1355 (La.1986).
Henshaw v. Audubon Park Com’n, 605 So.2d 640 (La.App. 4th Cir.), writ denied, 607 So.2d 570 (La.1992) and Montgomery v. Max Foote Const. Co., 621 So.2d 90 (La.App. 2d Cir.1993) stand for the proposition that, despite the qualifications stated in Murray, there is no duty to warn a plaintiff who makes an intelligent choice to act where the risk is obvious, universally known, easily avoidable and where the circumstances are such that a person of ordinary intelligence must realize the possible consequences of deliberately encountering the risk. For a discussion of Murray and the concepts of duty in such situations in the context of a motion for summary judgment, see Giddings and Laiche.
We hold that Errol Romero breached no duty owed to the plaintiffs and affirm the trial court’s holding to that effect.
Vicarious Liability
Plaintiffs urge that defendants are liable, not only for fault on the part of Romero, but for negligence on the part of the son-in-law, James D. Rhodes. Plaintiffs urge that Rhodes was Romero’s agent and the negligent acts of Rhodes are imputable to Romero. Factually, a relationship of agency in this case is questionable. However, for the purposes of considering whether plaintiffs’ suit was properly dismissed on motion for summary judgment, we will assume that Rhodes was Romero’s employee or servant. *1273 What negligence would Rhodes have been guilty of? Plaintiffs urge two acts of negligence: the failure to tell Harold Broussard of Romero’s instruction not to try to get the tree limb off of the structure and the fact that Rhodes assisted Harold Broussard in pushing the tree off of the structure. Although Rhodes claims he did advise Brous-sard of Romero’s instructions (which Brous-sard denies), for the purpose of this ease we will assume that Rhodes did not give the warning advice.
Assuming an agency relationship, it strikes us that Rhodes had no greater duty to warn than his principal did. However, if there was any duty, we would apportion 100% of the fault to Harold Broussard. Broussard was the initiator of the act of removal. Rhodes was not the owner of the property and he was not personally responsible for the condition. Romero gave his instructions to Rhodes because Rhodes involved himself in the clean up. Romero did not instruct Rhodes to advise others to avoid contact with the tree limb. In fact, and in context, what Romero told Rhodes did not necessarily have anything to do with exposure to danger in removing the tree limb. Romero’s instructions did not even focus on this particular tree limb. What Romero instructed Rhodes was to clear the small branches but to leave the large ones because he was going to engage a tree surgeon to do that.
It might be helpful to consider whether Romero himself, the principal, might have had a duty to speak out, had he been present when Harold Broussard suggested to Rhodes that they throw the tree limb on the ground. Harold Broussard admitted in his deposition that he needed no warning. He could see and observe the situation created by the fallen tree limb.
The Louisiana Supreme Court interpreted Shelton in Walker v. Union Oil Mill, Inc., 369 So.2d 1043 (La.1979) to state:
“In determining an owner’s liability under Civil Code Articles 2315 and 2316 the test has been stated to be whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others. Shelton v. Aetna Casualty and Surety Co., 334 So.2d 406 (La.1976). The owner and operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. In determining a particular defendant’s duty consideration should be given to the nature of the facility and the dangers presented by it. In considering a defendant’s duty to a particular person, consideration should be given to the person’s age, maturity, experience, familiarity with the premises and its dangers, and other such factors which might increase or decrease the risk of harm to that person. The duty would be greater to a person of young age and immature judgment. It would be lesser to a person with experience, knowledge and familiarity with the premises.”
Walker, at page 1047.
See also Henshaw v. Audubon Park Com’n, supra, and Montgomery n Max Foote Const. Co., supra.
Mr. Broussard was sixty years old at the time of the accident. He had a high school education, had worked as a butcher and as a carpenter most of his life, and at the time of the accident he had been in charge of maintenance of the Sugar Cane Festival building in New Iberia.
In our opinion, under the Walker considerations mentioned above, it is clear that Harold Broussard was just as competent as Romero to assess the situation and the danger posed in the conduct which he undertook on his own. Broussard needed no warning, and had Romero himself been present he would not have acted unreasonably had he remained silent. We apply the same holding to Rhodes, the alleged agent.
The plaintiffs also allege that Rhodes was negligent in assisting Harold Broussard, not negligent in the manner in which he assisted, rather in the mere act of participating. We fail to see logic in this contention of plaintiffs.
*1274 We do not find that Rhodes owed any duty to Harold Broussard the breach of which caused the Broussards’ injuries.
DISPOSITION
For the reasons given above, we affirm the judgment of the trial court. We assess the costs of this appeal to the appellants.
AFFIRMED.

. The Broussards originally named CNA Insurance Companies as a defendant, alleging that CNA issued a liability policy to Romero. In an amending petition, the Broussards added Continental Casualty Company. Romero and Continental Insurance Company answered and filed a motion for summary judgment.

. Counsel for plaintiffs' asserts in the brief filed in this court that Harold Broussard stated in his affidavit that his motivation in suggesting that the tree limb be thrown down was because he thought it was dangerous for Rhodes to trim a large branch from the limb with a chainsaw while standing on a ladder. We find no such affidavit in the record. Moreover, such an assertion is contrary to what Broussard said in his deposition which is in the record. It may be that Harold Broussard's motivation is immaterial. *1269 However, we supplement our statement of facts by quoting from Harold Broussard’s deposition which sets forth in his own words what his motivation was.

. For a general discussion of the concepts of legal duty and unreasonable risks and the considerations to be engaged in applying them, as laid down in the jurisprudence of Louisiana, see our case of Fontenot v. Fontenot, 621 So.2d 843 (La.App. 3d Cir.1993) and Montgomery v. Max Foote Const. Co., 621 So.2d 90 (La.App. 2d Cir.1993).