776 So.2d 513 (2000)
Yvette P. PATTON, et al.
v.
Joseph Craig LEMOINE, et al.
No. 00-765.
Court of Appeal of Louisiana, Third Circuit.
November 2, 2000.
Rehearing Denied December 28, 2000.
*514 Yvette P. Patton, In Proper Person, Zwolle, LA, Counsel for Plaintiffs/Appellants.
Joe Payne Williams, Natchitoches, LA, Counsel for Defendants/Appellees.
W. Fred Smith, Winnfield, LA, Kenneth Simmons, Many, LA, C. Rodney Harrington, Natchitoches, LA, Christopher Whittington, Baton Rouge, LA, John Whitehead, Many, LA, Counsel for Intervenors/Appellees.
(Court composed of BILLIE COLOMBARO WOODARD, MARC T. AMY, and MICHAEL G. SULLIVAN, Judges.)
SULLIVAN, Judge.
Yvette Patton appeals the trial court's judgment which awarded her general damages in the amount of $20,000.00 and past medical expenses in the amount of $5,000.00. The judgment also awarded her children, Alfred, Shelton, and Jessica, damages for loss of consortium in the amounts of $1,500.00, $1,500.00, and $2,000.00, respectively. These awards have not been appealed. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

Facts
On July 8, 1993, Ms. Patton was injured when the automobile she was driving on Louisiana Highway 6 in Natchitoches Parish was rear-ended by an automobile driven by Joseph Lemoine. The accident occurred when Ms. Patton was preparing to make a left-hand turn off of the highway. After the accident, Ms. Patton sought treatment from her physician, Dr. Garland Miller, a general practitioner, for pain in her neck and lower back. During the course of his treatment, Dr. Miller had Ms. Patton undergo MRIs of her neck and lower back, which revealed bulging discs at C3-4, C4-5, and L5-S1. According to Dr. Miller, most of her complaints concerned her back. Ms. Patton also sought treatment from other physicians following the accident; however, for reasons set forth below, only Dr. Miller testified for trial purposes.
Ms. Patton was involved in three additional automobile accidents following the accident with Mr. Lemoine. On September 24, 1994, she was involved in another rear-end collision. She settled her claim *515 against the driver of the car that hit her for $10,000.00 in October 1998. She was also involved in accidents on June 8, 1995 and September 5, 1995. Ms. Patton testified that her pain from the injuries of the July 8, 1993 accident never subsided. She indicated that each subsequent accident exacerbated her pain for a period of time; however, her pain level returned to the prior level shortly thereafter. Dr. Miller was of the opinion that the subsequent accidents aggravated Ms. Patton's pre-existing pain caused by the bulging discs. He testified that he thought the pain from the first accident was more or less permanent and had stabilized prior to the subsequent accidents. Her pain increased after each subsequent accident but only for a period of time.
Dr. Gordon Mead, an orthopedist, examined Ms. Patton at the request of Defendants. In his opinion, the bulging discs were not causing pain as Ms. Patton complained, explaining that studies have shown that many people have bulging discs, yet they do not have pain. According to Dr. Mead, there were no objective findings during his examination which substantiated Ms. Patton's complaints of pain.
Ms. Patton sued Mr. Lemoine and his insurer, Farm Bureau Casualty Insurance Company, for the injuries she suffered as a result of the accident. She sought loss of consortium damages for her children. Mr. Lemoine and Farm Bureau admitted liability, and on October 25 and 26, 1999, a jury trial was held to determine damages.
After the verdict, Ms. Patton filed a motion for new trial, which was denied after a hearing. Three attorneys who had formerly represented Ms. Patton in this matter, a health care provider who had rendered treatment to Ms. Patton as a result of the accident, and a financial institution intervened to assert claims for amounts Ms. Patton allegedly owed them. After a hearing on the interventions, a judgment was rendered recognizing the claims of all of the intervenors. Ms. Patton appeals, assigning five errors.

Standard of Review
A jury's finding of fact may not be reversed absent manifest error or unless clearly wrong. Stobart v. State, Through Dep't of Transp. and Dev., 617 So.2d 880 (La.4/12/93). The reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's findings; it must instead review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Id. The reviewing court must always keep in mind that "if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id. at 882-83, citing Housley v. Cerise, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
While factual determinations by the trier of fact are given great deference on appeal, if the trier of fact's decision was based on an erroneous application of law, rather than a valid exercise of discretion, the decision is not entitled to the deference it would otherwise enjoy. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993); We Sell Used Cars, Inc. v. United Nat'l Ins. Co., 30,671 (La.App. 2 Cir. 6/24/98), 715 So.2d 656.

Discussion

Expert Witnesses
Ms. Patton first complains that the trial court committed error in refusing to allow two expert witnesses to testify on her behalf. The two witnesses at issue are Richard H. Galloway, M.S.W., Ph.D., a vocation rehabilitation expert, and Carroll Dordan Aby, Jr., an economist. As noted *516 previously, Ms. Patton was represented by different attorneys during the course of this litigation. At one point, she was unrepresented and proceeded in proper person. During that time period, Ms. Patton filed a response to a pre-trial order and identified five witnesses that she would call to testify at trial: Dr. Miller, Dr. Galloway, Mr. Aby, Dr. Arthur Gleason, III, and Alfred Patton, Jr. After filing the pre-trial order, Ms. Patton notified defense counsel by letter that she would not be calling Dr. Gleason to testify at trial.
Ms. Patton then obtained new representation who, in preparation for trial, issued subpoenas to Dr. Gleason, David Horner, D.C., Dr. John P. Sandifer, Dr. W.W. Fox, Dr. Brent Boudreaux, and Dr. Andrew F. Marsala. Defense counsel filed a motion to quash the subpoenas on the basis of Ms. Patton's representation that she would not call Dr. Gleason to testify at trial and her failure to list the remaining witnesses on her pre-trial order response. At the hearing on the motion to quash, Ms. Patton's attorney informed the trial court that he was withdrawing the subpoenas issued to all witnesses identified in the motion to quash.
During the trial, Defendants objected to Dr. Galloway's testimony on the basis that there was no evidence in the record that served as the foundation for his testimony. Counsel questioned Dr. Galloway regarding the foundation for his testimony and Dr. Galloway confirmed that his testimony would be based, in part, upon the records of Ms. Patton's medical treatment by Dr. Gleason, Dr. Horner, Dr. Nabil Moufarrej, a neurologist, and Dr. Sandifer, as well as a functional capacity evaluation by Richard Guidroz, a physical therapist. Defendants objected to Dr. Galloway being allowed to testify because the foundation of his testimony was inadmissible hearsay, as none of the named health care providers were going to be called to testify at trial and none of their records were going to be introduced at the trial. The trial court sustained the objection.
La.Code Civ.P. art. 1636 provides in pertinent part:
A. When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence.
The purpose of a proffer is to preserve evidence excluded by the trial court so that the evidence is available for appellate review. McLean v. Hunter, 495 So.2d 1298 (La.1986). Ms. Patton did not proffer Dr. Galloway's testimony, so we have no way of knowing what his testimony would have been. Accordingly, she is precluded from complaining that his testimony was excluded. Fontenot v. Fontenot, 621 So.2d 843 (La.App. 3 Cir.1993), rev'd on other grounds, 93-2479 (La.4/11/94); 635 So.2d 219.
With regard to Mr. Aby, Ms. Patton did not call him as a witness during the trial, and there is no evidence in the record of a pre-trial ruling by the trial court regarding him as a trial witness. Accordingly, there is nothing for us to review. This assignment is without merit.

Attorney Fees
Ms. Patton assigned as error the trial court's recognition of an attorney's intervention for a fee without a signed contract. For reasons other than those cited by Ms. Patton, we find that the trial court's recognition of the three attorneys' claims for fees was error.
As previously noted, Ms. Patton was represented by a number of attorneys during the course of this litigation. Three of her former attorneys, Christopher Whittington, C. Rodney Harrington, and W. Fred Smith, intervened in this matter seeking to collect their fees and expenses. After the trial court signed the judgment, Defendants deposited the sum of $44,805.00 into the registry of the court, which represents the principal amount of *517 the judgment and accumulated legal interest.
At the hearing on the interventions, Ms. Patton consented to two of her former attorneys being paid but objected to the third being paid. After the hearing, the trial court issued a judgment awarding attorney fees and expenses in the total amount of $24,684.70, or fifty-five percent of the judgment amount, to the three intervening attorneys.
In determining the fee a plaintiff was obligated to pay his attorney who was discharged without cause, the Louisiana Supreme Court held in Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 118 (La.1978):
Considering the peculiar nature of the contingency fee contract, its social importance, and its potential for abuse as well, in light of our duty to enforce the Disciplinary Rules, we conclude that only one contingency fee should be paid by the client, the amount of the fee to be determined according to the highest ethical contingency percentage to which the client contractually agreed in any of the contingency fee contracts which he executed. Further, that fee should in turn be allocated between or among the various attorneys involved in handling the claim in question, such fee apportionment to be on the basis of factors which are set forth in the Code of Professional Responsibility.
This holding was confirmed in O'Rourke v. Cairns, 95-3054, p. 11 (La.11/25/96); 683 So.2d 697, 704, where the supreme court held that the Saucier rule also applied to cases of discharge with cause, stating "[t]his rule serves to confine client exposure to no more than one contingency fee in both with and without cause situations."
Ms. Patton contracted to pay Mr. Harrington forty percent of any amount recovered by him on her behalf. She contracted to pay Mr. Whittington and Mr. Smith smaller percentages. Accordingly, it was legal error for the trial court to award a judgment for attorney fees which exceeded the forty percent contingency fee Ms. Patton contracted to pay Mr. Harrington. On remand of this matter, Ms. Patton cannot be made to pay more than the "highest ethical contingency" fee for which she contracted. The fee should then be "allocated between or among the various attorneys involved in handling the claim in question, such apportionment to be on the basis of factors which are set forth in the Code of Professional Responsibility." Saucier, 373 So.2d at 118.

Jury Instruction
Ms. Patton assigned as error the trial court's instruction to the jury as follows:
You're further instructed if you find that Ms. Patton has failed to call as witnesses, doctors or other health care providers who treated Ms. Patton and she has further failed to give a reasonable explanation for this failure then it is presumed that these doctors and other health care providers' testimony would have been against Ms. Patton.
In Shelvin v. Waste Management, Inc., 580 So.2d 1022, 1027 (La.App. 3 Cir.1991), this court addressed the adverse presumption that the jury was instructed to apply in this case:
Failure of a party to call a witness creates a presumption that the witness's testimony would have been unfavorable, where that party has the burden of proof, or where that party has some control over, or a close relationship with the witness. The presumption does not apply where the witness was equally available to either party. Fortenberry v. Fortenberry, 432 So.2d 1125 (La.App. 3d Cir.1983).
See also Augustus v. St. Mary Parish Sch. Bd., 95-2498 (La.App. 1 Cir. 6/28/96); 676 So.2d 1144; Hernandez v. Schwegmann Giant Supermarkets, 464 So.2d 902 (La.App. 4 Cir.1985).
None of the health care providers who treated Ms. Patton, but were not *518 called to testify at trial, were under her control and all of them were equally available to Defendants; thus, it was error for this instruction to be given to the jury. We must review this error as we would any other relevant evidence presented and determine whether the instruction, compared to the record as a whole, substantially affected the outcome of the case. In other words, was the error so prejudicial that it warrants reversal of the judgment? Stevens v. Hartford Ins. Co. of the Midwest, 94-523 (La.App. 3 Cir. 11/2/94); 646 So.2d 981, writ denied, 95-311 (La.3/24/95); 651 So.2d 296.
Our review of this instruction in the context of this case leads us to conclude that the error does not warrant reversal. On the issue of general damages, the jury had the following evidence to consider: 1) the testimony of Ms. Patton, Dr. Miller, and Dr. Mead, and 2) three subsequent accidents for which Ms. Patton sought medical treatment and, in at least one instance, received monetary reparations. While the testimony of Ms. Patton and Dr. Miller, a general practitioner, was that her injuries in this accident were significant and caused her much pain, Dr. Mead, a specialist, discounted their testimony. In the jury's view, the subsequent accidents may have further discounted Ms. Patton's and Dr. Miller's testimony. In light of all of the evidence, we cannot say that the erroneous instruction had a substantial effect on the outcome of the matter.

General Damages
Finally, Ms. Patton assigns as error the amount of general damages awarded to her by the jury. The standard of review for damage awards is the abuse of discretion standard. It requires that we determine whether the award for the particular injuries and their effects on the particular plaintiff under the particular circumstances is a clear abuse of the much discretion of the trier of fact. Only after such a determination of an abuse of discretion is made, should we resort to prior awards for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
For the reasons set forth in the preceding discussion, we cannot say that the jury abused its discretion with respect to the damages it awarded Ms. Patton. This assignment of error is without merit.

Pauper Status
Ms. Patton also assigned as error the trial court's denial of pauper status after January 13, 2000, but did not brief it on appeal. In accordance with Rule 2-12.4 of the Uniform Rules of Louisiana Courts of Appeal, we deem this assignment abandoned.

Decree
The judgment of the trial court is affirmed in all respects, except for the apportionment of attorney fees. This matter is remanded to the trial court for reapportionment of attorney fees in conformity with the mandates of Saucier, 373 So.2d 102, and O'Rourke, 683 So.2d 697. All costs associated with the apportionment of attorney fees are assessed to the intervening attorneys. Costs of this appeal are assessed fifty percent to Yvette Patton and fifty percent to the intervening attorneys.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR PROCEEDINGS IN ACCORDANCE WITH THE INSTRUCTIONS HEREIN.